**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AMTAX HOLDINGS 227, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>COHNREZNICK LLP,<br><br>          Defendant. | Civil Case No.: 1:23-cv-01124-NRB<br><br>Hon. Naomi R. Buchwald |

**DEFENDANT COHNREZNICK LLP'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR LACK OF
SUBJECT MATTER JURISDICTION, PURSUANT TO FED. R. CIV. P. 12(b)(1),
OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL HISTORY & FACTUAL BACKGROUND........................................ 3

LEGAL ARGUMENT.................................................................................................. 9

**I.**  PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION. ...................................................... 9

**II.**  FEDERAL JURISDICTION DOES NOT EXIST BECAUSE AMTAX'S COMPLAINT RAISES STATE LAW CLAIMS AND PLAINTIFF DOES NOT SATISFY THE *GRABLE-GUNN* TEST. ........................................... 9

    **A.**  Two Federal Courts Have Already Determined that AMTAX Cannot Satisfy the *Grable-Gunn* Test. ...................................................... 10

    **B.**  AMTAX Also Cannot Meet the *Grable-Gunn* Test in this Matter................. 12

        **1.**  There is No Federal Question Necessary to the Determination that is Actually Disputed........................................................ 12

        **2.**  AMTAX Cannot Establish a Federal Issue that is Substantial. ............ 13

        **3.**  Exercising Jurisdiction Over AMTAX's Claims will Disrupt the Balance Between Federal and State Courts. .......................... 14

**III.**  PLAINTIFF'S COMPLAINT MUST BE ALSO DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ...................................................................................... 15

    **A.**  AMTAX's Claims for Breach of Fiduciary Duty, Unjust Enrichment and Professional Negligence are Barred by the Statute of Limitations. ......... 16

**IV.**  THE COURT ALSO SHOULD DISMISS PLAINTIFF'S CLAIMS AS THEY FAIL TO STATE A CLAIM FOR RELIEF. .................................. 17

    **A.**  The Complaint Fails To State A Claim For Malpractice. .............................. 17

    **B.**  The Court Should Dismiss AMTAX's Breach of Fiduciary Duty, Fraud and Unjust Enrichment Claims as They Are Duplicative of the Malpractice Claim................................................................... 20

    **C.**  AMTAX's Breach of Fiduciary Duty Claim Also Fails to State a Claim for Relief. ...................................................................... 22

    **D.**  The Court Should Also Dismiss AMTAX's Fraud Claim as AMTAX Fails to Plead Fraud with Particularity........................................... 23

i

**E.** AMTAX's Claim for Unjust Enrichment Fails to State a Claim. ................... 25

**F.** The Complaint Also Fails to State a Claim for Relief for Damages. ............. 26

RESERVATION OF RIGHTS ................................................................................................ 27

CONCLUSION ..................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Abramo v. Teal, Becker & Chiarmonte, CPAs,*
    713 F. Supp. 2d 96 (N.D.N.Y. 2010) ......................................................................22

*Acito v. IMCERA Group, Inc.,*
    47 F.3d 47 (2d Cir.1995)........................................................................................24

*American Tissue, Inc. v. Andersen,*
    275 F. Supp. 2d 398 (S.D.N.Y. 2003).....................................................................20

*AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.,*
    15 F.4th 551 (1st Cir. 2021)....................................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................9, 15, 26

*Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank,*
    57 F.3d 146 (2d Cir. 1995)......................................................................................24

*Barnett v. Countrywide Bank, FSB,*
    60 F. Supp. 3d 379 (E.D.N.Y. 2014) ......................................................................17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555 (2007)..........................................................................................9

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir.2002)...............................................................................3, 15

*Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.,*
    557 F. App'x 87 (2d Cir. 2014) ..............................................................................13

*CWCapital Cobalt VR Ltd. v. CWCapital Inves. LLC,*
    No. 17-CV-9463 (GBD), 2018 WL 2731270 (S.D.N.Y. May 23, 2018) ................13

*Dagostine v. Pendleton,*
    No. 2:22-CV-00220, 2022 WL 16950281 (S.D.W. Va. Nov. 15, 2022) .................14

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,*
    631 F.3d 42 (2d Cir.2011)........................................................................................25

*Empire Healthchoice Assur., Inc. v. McVeigh,*
    547 U.S. 677 (2006).................................................................................................10

*Fischer v. Fischer,*
    No. 20-cv-2173, 2021 WL 1720213 (N.D. Tex. Apr. 30, 2021) .............................14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)..................................................................................................10

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
  17 F.Supp.2d 275 (S.D.N.Y. 1998) ........................................................................25

*Gunn v. Minton*,
  568 U.S. 251 (2013)...............................................................................................9, 10

*Hatfield v. Herz*,
  109 F. Supp. 2d 174 (S.D.N.Y. 2000).....................................................................27

*Hous. Works, Inc. v. Turner*,
  179 F. Supp. 2d 177 (S.D.N.Y. 2001).....................................................................19

*International Audiotext Network, Inc. v. American Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir.1995)........................................................................................3, 15

*Johnson v. Nextel Communications, Inc.*,
  660 F.3d 131 (2d Cir. 2011)......................................................................................22

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*,
  320 F.Supp.2d 164 (S.D.N.Y.2004)....................................................................25, 27

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994).....................................................................................................9

*Kuruwa v. Meyers*,
  823 F.Supp.2d 253 (S.D.N.Y.2011)..........................................................................21

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir.2006)........................................................................................24

*Makarova v. U.S.*,
  201 F.3d 110 (2d Cir. 2000).........................................................................................9

*Merrell Dow Pharms. Inc. v. Thompson*,
  478 U.S. 804 (1986)....................................................................................................10

*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008).........................................................................................9

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
  770 F.3d 1010 (2d Cir. 2014)......................................................................................10

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
  824 F.3d 308 (2d Cir. 2016)..................................................................................12, 14

*Paladini v. Capossela, Cohen, LLC*,
No. 11 CIV. 2252 LAP, 2012 WL 3834655 (S.D.N.Y. Aug. 15, 2012), *aff'd*,
515 F. App'x 63 (2d Cir. 2013) .........................................................................................20

*Rapoport v. Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000) .................................................................................16

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
893 F. Supp. 285 (S.D.N.Y. 1995) ....................................................................................22

*Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund No. 682*,
401 F. Supp. 3d 367 (E.D.N.Y. 2019) ...............................................................................12

*Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*,
222 F.3d 63 (2d Cir. 2000)................................................................................................19

*Sheridan v. New Vista, L.L.C.*,
406 F. Supp. 2d 789 (W.D. Mich. 2005) ...........................................................................14

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir.1994)................................................................................................25

*Sparks Energy Gas, LP v. Toxikon Corp.*,
908 F. Supp.2d 267 (D. Mass 2012) ..................................................................................27

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)...................................................................................23

*SunAmerica Housing Fund 1500 v. Pathway of Pontiac, Inc.*,
33 F.4th 872 (6th Cir. 2022) ...............................................................................................4

*Tantaros v. Fox News Network, LLC*,
12 F.4th 135 (2d Cir. 2021) ..........................................................................................12, 13

*Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*,
No. 20-10902, 2020 WL 7646934 (D. Mass. Dec. 23, 2020)............................................11

*Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*,
586 F. Supp. 2d 119 (S.D.N.Y. 2008).................................................................................19

*TVT Records v. Island DefJam Music Group*,
412 F.3d 82 (2d Cir.2005)..................................................................................................24

*U.S. East Telecomm., Inc. v. U.S. West Commc'n Servs., Inc.*,
38 F.3d 1289 (2d Cir. 1994)...............................................................................................25

*Warnaco Group., Inc. Sec. Litigation*, 388 F.Supp.2d 307, 318 (S.D.N.Y. 2005).......................22

*Whitney v. Citibank, N.A.*,
　782 F.2d 1106 (2d Cir.1986) ............................................................................22

## STATE CASES

*Ackerman v. Price Waterhouse*,
　84 N.Y.2d 535 (1994) .....................................................................................17

*Barrett v. Freifeld*,
　908 N.Y.S.2d 736 (2010) ...............................................................................24

*Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*,
　73 A.D.3d 581 (2010) .....................................................................................17

*Bitter v. Renzo*,
　101 A.D.3d 465 (1st Dept. 2012) ...................................................................22

*Bullmore v. Ernst & Young Cayman Islands*,
　45 A.D.3d 461 (2007) .....................................................................................18

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
　493 N.Y.S.2d 435 (1985) .........................................................................18, 19

*Friedman v. Anderson*,
　803 N.Y.S.2d 514 (1st Dept. 2005) ...............................................................22

*Hamer v. Chessman*,
　129 A.D.2d 491 (1st Dept. 1987) ...................................................................22

*Ingrami v. Rovner*,
　45 A.D.3d 806 (2nd Dept. 2007) ...................................................................17

*Kaufman v. Cohen*,
　307 A.D.2d 113 (2003) ...................................................................................17

*LaSalle National Bank v. Ernst & Young, LLP*,
　729 N.Y.S.2d 671 (1st Dept. 2001) ...............................................................19

*Mecca v. Shang*,
　258 A.D. 2d 569 (2d Dept. 1999) ...................................................................20

*Ossining Union Free School Dist. v Anderson LaRocca Anderson*,
　73 N.Y.2d 417 (1989) .....................................................................................18

*Parrott v. Coopers & Lybrand, L.L.P.*,
　702 N.Y.S.2d 40, *aff'd*, 718 N.Y.S.2d 709 (2000) .......................................19

*Tasseff v. Nussbaumer & Clarke, Inc.*,
　298 A.D.2d 877 (4th Dept. 2002) ...................................................................21

*Tenants' Development Corporation v. AMTAX Holdings 227, LLC, et al.*,
    Civil Action No. 1084CV01260-BLSL ............................................................................ passim

*Ultramares Corporation v. Touche*,
    255 N.Y. 170 (1931) ..............................................................................................................17

*White of Lake George, Inc.v. Bell*,
    251 A.D.2d 777 (1998) ..........................................................................................................21

*Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*,
    9 N.Y.3d 1 (2007) ..................................................................................................................16

## FEDERAL STATUTES

26 U.S.C. § 42(i)(7) ................................................................................................................ passim

28 U.S.C. § 1331 ...........................................................................................................................9

## RULES

CPLR 214(4) ................................................................................................................................17

CPLR 214(6) ................................................................................................................................16

Fed. R. Civ. P. 9(b) ............................................................................................................23, 24, 25

Fed. R. Civ. P. 12(b)(1) .............................................................................................................1, 27

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1, 15, 28

Defendant, CohnReznick LLP ("CR") respectfully submits this Memorandum of Law in support of its motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and, in the alternative, to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

## PRELIMINARY STATEMENT

Since 2020, the partners of Tenants' Development II, L.P. (the "Partnership") have been in litigation concerning the mechanism by which plaintiff, AMTAX Holdings 227 LLC ("AMTAX") will exit the Partnership. The action is entitled *Tenants' Development Corporation v. AMTAX Holdings 227, LLC, et al.*, Civil Action No. 1084CV01260-BLSL (the "MA Action") pending in the Superior Court of Massachusetts (the "MA Court"). The Partnership was formed to develop low-income housing in the South End of Boston and to obtain an award of tax credits under Section 42 of the Internal Revenue Code (the "LIHTC Program"). At issue in the MA Action is whether Tenants' Development Corporation ("TDC") properly exercised its right of first refusal ("ROFR") to purchase property owned by the Partnership and whether the ROFR price was properly calculated.

Now AMTAX seeks to drag CR into its fight with TDC, premised upon the same alleged improper ROFR calculation. At all times, CR served as the accountants for the Partnership. Nonetheless, AMTAX – who is a limited partner of the Partnership and never engaged CR to perform accounting services on its behalf for the subject project – brings this malpractice case against CR alleging that CR improperly calculated the ROFR price. AMTAX further alleges claims for breach of fiduciary duty, fraud and unjust enrichment.

As demonstrated below, this Court lacks subject matter jurisdiction over this dispute. Although AMTAX contends that this Court is required to interpret the Internal Revenue Code (the "Code") to assess its state court/malpractice claims, AMTAX cannot establish that this case falls

1

within in the "slim" category of cases where federal courts have jurisdiction over state law claims as AMTAX cannot meet the *Grable-Gunn* test. This Court can easily dismiss AMTAX's claims against CR, without even addressing the Code, as it lacks privity with CR.

Indeed, the MA Action was originally brought in federal court and the District Court of Massachusetts ("MA Dist. Court") found it lacked subject matter jurisdiction when it was called upon to interpret the exact ROFR calculation at issue here, which the First Circuit then affirmed.

Should the Court nonetheless find that it has jurisdiction over this matter, the law mandates dismissal of AMTAX's Complaint.  There are multiple road blocks for AMTAX to proceed.  First, AMTAX's claims for breach of fiduciary duty, professional negligence and unjust enrichment are barred by the three-year statute of limitations.  Second, AMTAX has not pled a claim for malpractice as AMTAX has not (and cannot allege) that it has a near privity relationship with CR where not a single communication is alleged to have occurred between the parties.  Third, the remaining claims for breach of fiduciary duty, fraud and unjust enrichment must be dismissed as they are duplicative of AMTAX's meritless malpractice claim and fail to state a claim for relief.

Worse yet, AMTAX continues to pursue these claims when the MA Court has already determined that AMTAX has no ability to recover against CR.  The MA Court found that the ROFR calculation was "colorable" and the calculation "does not amount to a breach of the duty of loyalty and good faith."  Even more basically, the MA Court found that AMTAX is not entitled to the millions of dollars it seeks to collect from CR as no sale of the property ever occurred.

Against this backdrop, one is left to question why AMTAX persists with this action.[1]

---

[1] In its complaint, AMTAX characterizes CR's refusal to change its calculation as "CR hav[ing] chosen to become a partisan supporter of LIHTC general partners to the detriment of investors like AMTAX."  Compl. at ¶ 110.

## PROCEDURAL HISTORY & FACTUAL BACKGROUND[2]

CR served as the accountants for the Partnership, which was formed to develop a 185-unit low-income housing project in the South End of Boston (the "Property") and to obtain an award of federal tax credits under the LIHTC Program. Compl. at ¶ 20.

### The LIHTC Program

The LIHTC Program encourages private investment to finance affordable housing development by providing certain tax credits to the owners of the affordable housing projects. *Id.* at ¶ 26. The tax credits are earned over a fifteen-year period known as a "compliance period." *Id.* As tax credits are only available for "owners" of affordable housing projects, the LIHTC projects are typically structured by forming a limited partnership to own property with a non-profit partner serving as the general partner and an investor serving as a limited partner. *Id.* at ¶ 27. The non-profit general partner holds a nominal equity interest in the partnership and is responsible for running the project whereas the investor limited partner typically holds a substantial portion of the equity interest in the partnership. *Id.* at ¶ 28.

At the end of the 15-year compliance period, most investor limited partners seek to leave the project as the investor's previously actualized tax benefits are no longer subject to recapture. *See* Declaration of Melissa A. Peña (the "Peña Dec."), Ex. 1, the Memorandum and Order on Cross Motions for Summary Judgment in the MA Action (the "MA Decision"), at p. 3 (internal citation omitted). The limited partner can exit the partnership by selling its interest in the partnership to the nonprofit general partner. *Id.* Alternatively, Section 42(i)(7) of the Code authorizes owners

---

[2] As CR has a filed a motion to dismiss, the factual background is drawn from the allegations in the Complaint and the documents incorporated by reference, integral, or heavily relied upon therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (A court may consider documents "incorporated in [the complaint] by reference" without converting a motion to dismiss into one for summary judgment) (internal quotations omitted); *see also International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.").

of LIHTC properties to grant eligible stakeholders a ROFR that would allow purchase of the property after the compliance period.  *See* Compl. at ¶ 32.  The ROFR holder is typically an affiliate of the non-profit general partner.  *Id.*

While Section 42(i)(7) authorizes a LIHTC partnership to grant a ROFR, a ROFR is provided for by contract.[3]  *See* Compl. at ¶ 37.

**The Partnership and Related Parties**

The Partnership follows the general pattern described above for LIHTC partnerships.  The Partnership consists of the following:  (a) Tenants' Development II Corporation (the "General Partner"), the general partner and managing partner of the Partnership who holds a 0.009% interest in the Partnership; (b) AMTAX, the investor/limited partner in the Partnership, who holds a 99.99% interest in the Partnership; and (c) Tax Credit Holdings III, LLC ("TCH"), a special limited partner, who holds a 0.001% interest in the Partnership.  Compl. at ¶¶ 10, 13 and 14.

Non-party, TDC,[4] is an affiliate of the General Partner and is not a partner in the Partnership.  *Id.* at ¶ 15.  Pursuant to a Right of First Refusal Agreement ("ROR Agreement"), TDC holds a ROFR to purchase the Property from the Partnership.  *See* Peña Dec., Ex. 2.  TDC also made various unsecured loans to the Partnership totaling approximately $25 million ("Non-Recourse Debt").  Compl. at ¶ 23.  Non-party, Alden Torch Financial LLC ("Alden Torch")[5] is an

---

[3] Section 42(i)(7) of the Code provides a safe harbor, which prevents the IRS from denying a LIHTC partnership certain tax credits provided that the ROFR granted under the partnership's contract complies with the statute.  *See SunAmerica Housing Fund 1500 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 875 (6th Cir. 2022).

[4] TDC seeks to intervene in the within action.  *See* Doc. No. 12.

[5] In the industry, it has been alleged that Alden Torch is an "aggregator".  "The Washington State Housing Finance Commission in a report called out so-called 'aggregator' investment firms – those amassing tax-credit portfolios – saying they 'often use burdensome tactics that take advantage of legal ambiguities, resource disparities, and economies of scale to overwhelm their nonprofit counterparts.'"  *See, e.g., Investors Mine for Profits in Affordable Housing, Leaving Thousands of Tenants at Risk* (April 29, 2021), available at wbur.org/news/2021/04/29/investors-low-income-housing-boston-sound-end.

investment management company that manages LIHTC investments, including AMTAX's interest in the Partnership.  *Id.* at ¶ 11.

### AMTAX's Allegations Concerning CR's Calculations

In its Complaint, AMTAX alleges that CR improperly calculated the ROFR price for which TDC could acquire the Property.  *Id.* at ¶ 6.  AMTAX acknowledges that, at all times, CR was the accountant for the Partnership (*see id.* at ¶¶ 1, 62, and 113) yet AMTAX nonetheless brings this malpractice case against CR.

AMTAX alleges that CR performed exit tax calculations in 2017, 2018 and 2019 which AMTAX contends "represented the anticipated tax liability AMTAX would incur upon a sale of the Property".  *Id.* at ¶ 60.  AMTAX further alleges that CR properly performed such calculations as it took into account AMTAX's negative capital account and the Non-Recourse Debt.  *Id.*  As a result of such calculations, AMTAX alleges it would receive "exit taxes" of approximately $5 million.  *Id.* at ¶¶ 69-73.

AMTAX further alleges that after performing the 2017, 2018 and 2019 calculations (collectively the "Exit Tax Calculations"), in 2020, CR improperly calculated the ROFR price in that it failed to take into account AMTAX's negative capital account and the Non-Recourse Debt owed by the Partnership.  *Id.* at ¶ 81.

While AMTAX alleges that the Exit Tax Calculations and ROFR price calculation both address "'taxes attributable to a sale' of the Property," (*see* Compl. at ¶ 65) and should be calculated the same, as AMTAX itself also recognizes in its Complaint, the Exit Tax Calculations were actually provided by the General Partner (not CR) to AMTAX in connection with its offer ". . . for an early purchase *of the Partnership Interests* in the Partnership held by … AMTAX " rather than a sale of the Property.  Compl. at ¶ 70 and Exhibit 1 (emphasis added).

According to AMTAX, in September of 2019, the General Partner and its consultants – not CR – engaged in email communications where they purportedly strategized to pay AMTAX $0 above the assumption of existing debt. *Id.* at ¶ 79. AMTAX alleges that this strategy was carried out by the General Partner entering into a "secret side engagement in January 2020, pursuant to which [CR] would provide a different calculation [than the Exit Tax Calculations], this time excluding AMTAX's projected Exit Taxes upon a sale of the Property" (the "2020 Engagement Letter"). *Id.* at ¶ 80.[6]

In February of 2020, CR calculated the ROFR price to be $17,108,380. *Id.* at ¶ 94. On February 7, 2020, CR sent the ROFR calculation to its client, the Partnership. *Id.* at ¶ 85. On February 10, 2020, the Partnership[7] sent a "Disposition Notice" to TDC informing TDC that it had thirty days to purchase the Property for the sum of $17,108,380. *Id.* at ¶ 94. On February 11, 2020, TDC sent a Purchase Notice to the Partnership to exercise the right to purchase the Property for $17,108,380. *Id.* at ¶ 96. AMTAX notified the General Partner that it objected to (i) the sale of the Property given it was without its consent and (ii) the price calculated by CR. *Id.* at ¶ 98. Thereafter, the General Partner and TDC filed the MA Action as described further below. *Id.* at ¶ 99.

On October 21, 2022, AMTAX (through Alden Torch) sent a letter to CR demanding that it redo its ROFR price calculation to make it consistent with the Exit Tax Calculations. *See* Peña Dec., Ex. 5; *see also* Compl. at ¶¶ 104-107.

---

[6] Although AMTAX alleges that there was a "secret agreement" with the General Partner to perform a calculation that deviated from the prior Exit Tax Calculations, the alleged "secret agreement" is an engagement letter between CR and its client, the Partnership. *Id.* at ¶ 6; *see also* Peña Dec., Ex. 3. The General Partner is not a party to the 2020 Engagement Letter and merely signed it as the managing member of the Partnership. *Id.*

[7] AMTAX's Complaint alleges that the "General Partner" sent out the Disposition Notice. However, a review of the Disposition Notice indicates that it was sent by the Partnership. *See* Peña Dec., Ex. 4.

On November 2, 2022, CR responded to Alden Torch standing by its original ROFR calculation (the "CR Response").  *See* Peña Dec., Ex. 6; *see also* Compl. at ¶ 108-109.  Although AMTAX alleges that in the CR Response, CR "refused to attempt to reconcile . . ." the Exit Tax Calculations with the ROFR price, to the contrary, the CR Response stated as follows:

> We are in receipt of your letter dated October 21, 2022.   Unfortunately the calculations that you inquire were prepared for another client.  Just as [CR] would do for AMTAX, we cannot discuss client confidential information.  **That said, however, the "fourth calculation" that you reference is a sale of the property at the minimum purchase price as defined in Internal Revenue Code Section 42(i)(7), it is not an exit tax calculation.**  More specifically, it is not an exit tax calculation given the unsecured debt situation that exists here.  We are unable to comment further without express permission from the [Partnership].

Peña Dec., Ex. 6 ¶ 109 (emphasis added).

## State Law Claims Alleged by AMTAX

Based on the foregoing, AMTAX alleges that by improperly calculating the ROFR price, CR breached some purported fiduciary duty to AMTAX (Count I) and engaged in professional negligence (Count II).  AMTAX alleges a claim for fraud (Count III) contending that CR failed to disclose the 2020 Engagement Letter to AMTAX and a claim for unjust enrichment (Count IV).

## The MA Action

In the MA Action between AMTAX and Alden Torch (jointly the "AMTAX Parties") and the General Partner and TDC (jointly the "TDC Parties"), among other causes of action, the AMTAX Parties sought a declaratory judgment concerning TDC's exercise of its ROFR and seeking to invalidate the calculation of the ROFR at the price calculated by CR.[8]

---

[8]  In addition, AMTAX filed counterclaims against the TDC Parties alleging that (a) AMTAX "conditionally" exercised its right to require the General Partner to market the Property for sale and any sale remained subject to its consent; and (b) the General Partner proceeded with a sham marketing effort in order to sell the Property to TDC below market and the ROR was not properly triggered. *See* Peña Dec., Ex. 1 at P. 21-24.

On June 30, 2023, the MA Court entered the MA Decision, which denied, in part, and granted, in part, each of the parties' motion for summary judgment.[9]  The MA Court found that language regarding the manner in which one would calculate the ROFR price at issue was in fact ambiguous. The MA Court stated as follows:

> It is not clear from the language of § 42(i)(7)(B) how one determines the taxes that are 'attributable to [a] sale,' and neither Section 42 nor the ROR Agreement explains the meaning of the phrase. **The parties have not pointed to any regulation IRS guidance, or case law providing direct support for their interpretation of this language, and I have found none.**

See Peña Dec., Ex. 1 at pp. 14-15 (emphasis added).

Although the MA Court ultimately determined that AMTAX had "the better argument", the MA Court made the following *finding of fact*:

> [The Partnership's] calculation of the Purchase Price reflected a colorable interpretation of language in the ROR Agreement and Section 42.  As noted above, there is no case law or regulatory guidance interpreting the phrase "taxes attributable to such Sale", and the meaning of that phrase is not, at first blush, entirely clear.  A legitimate dispute such as this, without more does not amount to a breach of the duty of loyalty and good faith.

*Id.* at p. 23.  For this reason, the MA Court dismissed AMTAX's breach of fiduciary claim against the General Partner. *Id.*  The MA Court also found that AMTAX could not establish its damages given the sale of the Property did not proceed.  *Id.*

---

[9] On February 9, 2023, AMTAX initiated this action by filing its Complaint. *See* Doc. No. 1. On March 8, 2023, non-party, TDC filed a letter with the Court requesting a pre-motion conference concerning its anticipated motion to dismiss or, in the alternative, to stay this action pending adjudication of the MA Action. *See* Doc. No. 12. On March 13, 2023, CR filed a letter requesting a pre-motion conference for the instant motion. *See* Doc. No. 16. AMTAX opposed both TDC's and CR's requests. *See* Doc. Nos. 15, 17.  On June 15, 2023, the Court stayed this action pending resolution of the summary judgment motions in the MA Action. *See* Doc. No. 24. After the MA Court handed down the MA Decision, the Court lifted the previously imposed "stay lite" on August 1, 2023, and permitted TDC and CR to bring its proposed motions. *See* Doc. No. 28.

**LEGAL ARGUMENT**

**I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).   A plaintiff has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," but the requisite "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

Here, Plaintiff contends that the Court has subject matter jurisdiction over what amounts to an accounting malpractice claim against CR because ". . . this action raises necessary, disputed, and substantial issues relating to Section 42(i)(7) of the Code and its interplay with other provisions of the Code and corresponding federal regulations . . ." *See* Compl. at ¶ 16.[10]   As set forth below, Plaintiff cannot establish *its burden* to demonstrate that the Court has jurisdiction over this matter.

**II.   FEDERAL JURISDICTION DOES NOT EXIST BECAUSE AMTAX'S COMPLAINT RAISES STATE LAW CLAIMS AND PLAINTIFF DOES NOT SATISFY THE *GRABLE-GUNN* TEST.**

Under 28 U.S.C. § 1331, Congress has authorized the federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws or treaties of the United States."   A federal court can exercise jurisdiction under 28 U.S.C. § 1331 in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013).   "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.*   There is also a "special and small category of

---

[10] Paragraphs 16-18 of the Complaint alleging that federal jurisdiction is appropriate represent a legal conclusion that the Court need not accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasizing court shall not "accept as true a legal conclusion couched as a factual allegation.").

cases" in which federal jurisdiction applies to state law claims, but this category is "slim". *Id.*; *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) ("[T]he Supreme Court has been sparing in recognizing state law claims fitting this criterion.").

Federal jurisdiction is limited and there is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). In *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005), the Supreme Court established a four part test to determine whether a federal court can exercise jurisdiction over a state law claim involving a federal issue. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing the "*Grable-Gunn* test"). This is not a balancing test—if any one of these four prongs is absent, there is no federal jurisdiction. *Id*.

As demonstrated below, AMTAX cannot satisfy all elements of the *Grable-Gunn* test.

## A.    Two Federal Courts Have Already Determined that AMTAX Cannot Satisfy the *Grable-Gunn* Test.

Consistent with the MA Dist. Court and the First Circuit when it considered the same ROFR calculation presented here, this Court should also find that it does not have subject matter over this dispute as AMTAX cannot satisfy the *Grable-Gunn* test.   Applying the *Grable-Gunn* test, the MA Dist. Court closed its doors to AMTAX's claims in the MA Action where it also challenged the subject ROFR calculation.  With respect to the first element of the *Grable-Gunn* test, the MA Dist. Court reasoned that:

> Resolving the parties' dispute simply does not require deciding whether the Agreement's right of first refusal falls into the safe harbor created by the statute.

> The parties' dispute centers primarily on whether TDC and TD II acted in accordance with the Agreement when they sought and received an outside offer to buy the [Property] and then purported to invoke the right of first refusal to allow TDC to buy the [Property] at the lower [ROFR price]. Whether the Agreement permitted this course of action does not depend on the meaning of 26 U.S.C. § 42. The only relevance of that statute is to determine whether, if TDC and TD II's actions accorded with the Agreement, the parties were entitled to the [LIHTC] they have received. **If the Court held that TDC and TD II's actions did not accord with the Agreement on a contract-law basis unrelated to 26 U.S.C. § 42, the Court would have no occasion to interpret that statute.**

*See Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC,* No. 20-10902, 2020 WL 7646934, at *3 (D. Mass. Dec. 23, 2020) (internal citations omitted).

Although the federal question was disputed satisfying the second element, the MA Dist. Court found the issue presented (the propriety of the ROFR calculation, which is also at issue here) was not substantial as "[t]here [wa]s no federal party to the case, nor does the record reveal that the Federal Government has challenged the validity of [LIHTC] generated with properties whose ownership agreements include a right of first refusal like the one in this case." *Id.* at *4. As to the fourth factor, the MA Dist. Court found that exercising jurisdiction would disrupt the federal-state balance as interpretation of the parties' contract is squarely a matter of state law. *Id.*

After AMTAX appealed the MA Dist. Court decision, the First Circuit affirmed reasoning that the federal question was not important to the federal system as it did not implicate "concrete federal activity". *See AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551, 558 (1st Cir. 2021).

Although the decisions of the MA Dist. Court and First Circuit are not binding on this Court, CR respectfully submits that they are instructive to the Court's decision as two federal courts have already determined that interpretation of Section 42 of the Code in connection with TDC's exercise of the ROFR is simply *not* a significant federal issue. This Court has already recognized the overlap in factual issues in this case and the MA Action when it determined to stay

this action pending the MA Court's consideration of the dueling motions for summary judgment filed by the parties in such action. *See* Doc. Nos. 20 & 24.  Accordingly, similar to the MA Dist. Court and First Circuit, this Court should find that the *Grable-Gunn* test is not met here.

Remarkably, AMTAX points this Court's attention to *Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund No. 682,* 401 F. Supp. 3d 367 (E.D.N.Y. 2019), without directing the Court to the adverse rulings AMTAX faces by the MA Dist. Court and First Circuit.

### B.   AMTAX Also Cannot Meet the *Grable-Gunn* Test in this Matter.

Conducting its own analysis of the *Grable-Gunn* test, this Court can easily find that the case does not fall within the narrow exception that permits federal courts to exercise jurisdiction over state law claims.

### 1.   There is No Federal Question Necessary to the Determination that is Actually Disputed.

AMTAX cannot establish the first and second elements of the *Grable-Gunn* test that the federal issue is "necessary" to a determination of this action or central to the "dispute".  The first element of the *Grable-Gunn* test is satisfied "where the plaintiff's right to relief necessarily depends on resolution of a question of federal law," and "federal jurisdiction exists if a court **must apply** federal law to the plaintiff's claim in order to decide the case." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) (emphasis added).  As to the second *Grable-Gunn* element, ". . . the 'actually disputed' factor of the test is satisfied when the federal issue is 'the only' or 'the central' point in dispute." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 315, and *Gunn*, 568 U.S. at 259).

Here, AMTAX cannot satisfy the first element of the *Grable-Gunn* test as AMTAX cannot show that interpretation of Section 42 of the Code is "necessary" to decide this dispute.  When a non-client, such as AMTAX, sues an accounting firm for malpractice, breach of fiduciary duty,

fraudulent concealment and unjust enrichment, the central issue in dispute is whether CR owed any duty to AMTAX given the lack of privity between the parties.  For all the reasons set forth in Point IV.A, *supra*, this Court could (and should) find that CR owed no duty to AMTAX.  No interpretation of the Code would even be necessary.

As there is no federal issue "necessarily raised", it follows that there is no disputed issue necessary to satisfy the second element of the *Grable-Gunn* test.

**2.      AMTAX Cannot Establish a Federal Issue that is Substantial.**

AMTAX also cannot establish that interpretation of Section 42 of the Code is substantial as required to satisfy the third element of the *Grable-Gunn* test.  For a federal issue to be substantial, the issue of federal law must be ". . . important not solely to the parties in the immediate case but also to 'the federal system as a whole.'" *Tantaros*, 12 F.4th at 145 (citing *Gunn,* 568 U.S. at 260).

Courts have found that a federal issue satisfies the "substantial" requirement when the federal issue "present[s] a nearly pure issue of law, one that could be settled once and for all and would govern numerous ... other cases." *CWCapital Cobalt VR Ltd. v. CWCapital Inves. LLC*, No. 17-CV-9463 (GBD), 2018 WL 2731270, at *5 (S.D.N.Y. May 23, 2018).  By contrast, courts have found that a federal issue is not substantial where the determination is "a fact-specific application of the regulations to [the defendant] that does not implicate the validity of the regulations themselves, or have any other broader effect on federal interests." *Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014).

Here, AMTAX's state law claims will not even necessarily require interpretation of the Code.  No federal activity is implicated by AMTAX's claims.  The IRS is not a party to this action.  Further, this Court could find that AMTAX lacks privity with CR, which in turn requires dismissal of AMTAX's malpractice claim against CR without interpretation of the Code. Also, the MA

Court already determined that CR's calculation of the ROFR was "colorable." Once that decision is deemed final, AMTAX will be collaterally estopped from asserting its malpractice claim before this Court, meaning again this Court will not be required to interpret the Code to reach a conclusion on the claims in this matter. Thus, the determination of the issues here will not have an impact on the federal system.

### 3. Exercising Jurisdiction Over AMTAX's Claims will Disrupt the Balance Between Federal and State Courts.

"The fourth *Grable-Gunn* requirement . . . focus[es] primarily on the nature of the claim, the traditional forum for such a claim and the volume of cases that would be affected." *New York ex rel. Jacobson v. Wells Fargo National Bank N.A.,* 824 F.3d 308, 316 (2d Cir. 2016).

Federal courts have consistently found that state law malpractice claims cannot satisfy this fourth element otherwise exercising jurisdiction will open the floodgates to state law malpractice claims being filed in Federal Court. *See Dagostine v. Pendleton*, No. 2:22-CV-00220, 2022 WL 16950281, at *7 (S.D.W. Va. Nov. 15, 2022) ("Anytime the account-client relationship sours, the disgruntled party could haul the other into federal court—despite only having a state-law claim— simply because the contract tangentially relates to federal law."); S*heridan v. New Vista, L.L.C.*, 406 F. Supp. 2d 789, 794 (W.D. Mich. 2005) ("The potential for shifting the division of labor from state to federal courts is much greater in this case because if federal jurisdiction exists here, any malpractice . . . claim alleging an unreasonable interpretation of federal law, be it tax, securities, ERISA, etc. would invoke federal question jurisdiction."); *Fischer v. Fischer,* No. 20-cv-2173, 2021 WL 1720213, at *7 (N.D. Tex. Apr. 30, 2021) (finding court did not have subject matter jurisdiction as "[a]llowing Plaintiff to litigate this case in federal court would open the federal courts to garden variety malpractice, breach of duty, and similar state law claims based on

allegations that the defendant made fraudulent and negligent misrepresentations related to tax law").

In the instant case, exercising subject matter jurisdiction over AMTAX's state law claims would open the floodgates to malpractice claims being brought in federal court. Every plaintiff who has a malpractice claim against an accountant that involves the tax Code (which accountants rely on with regularity) and every plaintiff who has a malpractice claim against a lawyer that requires interpretation of *any* federal statute could file such claims in federal court. As such, exercise of jurisdiction over AMTAX's claims would not just disrupt the balance between federal and state responsibilities, but severely threaten such balance.

As AMTAX cannot meet the test set forth in *Grable-Gunn,* this Court lacks subject matter jurisdiction over AMTAX's claims.

## III.  PLAINTIFF'S COMPLAINT MUST BE ALSO DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 at 678 (quoting *Twombly*, 550 U.S. at 570). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)). The court shall not "accept as true a legal conclusion couched as a factual allegation" as "[t]hread bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

A court may consider documents "incorporated in [the complaint] by reference" without converting a motion to dismiss into one for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (internal quotations omitted); *see also International*

*Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint,"). "Where a document is referenced in a complaint, 'the documents control and this Court need not accept as true the allegations in the . . . complaint.'" *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

As set forth below, the Court should dismiss AMTAX's claims against CR in their entirety for multiple reasons.  First, AMTAX's malpractice, breach of fiduciary duty and unjust enrichment claims are barred by the statute of limitations.  Second, AMTAX's claims for breach of fiduciary duty, fraud and unjust enrichment are duplicative of plaintiff's malpractice claim.  Third, *all* of AMTAX's claims fail to state a claim for relief and its fraud claim fails to plead fraud with particularity.  Finally, AMTAX cannot establish the damages it seeks.

### A.    AMTAX's Claims for Breach of Fiduciary Duty, Unjust Enrichment and Professional Negligence are Barred by the Statute of Limitations.

AMTAX's claims for breach of fiduciary duty, professional negligence, and unjust enrichment are all time barred by the applicable three-year statute of limitations.[11]

The crux of AMTAX's Complaint is its professional negligence claim against CR.  Under New York law, malpractice claims are subject to a three-year statute of limitations.  *See* CPLR 214(6) (stating that "an action to recover damages for malpractice . . . must be brought within three years).  "An action for professional malpractice must be commenced within three years of the date of accrual," and this accrual occurs "when the malpractice is committed." *Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 7 (2007).  Thus, "the claim

---

[11] This argument is made without prejudice to CR's arguments that, in the event this Court ultimately finds that privity exists between CR and AMTAX (which it does not), AMTAX should be subject to the one-year statute of limitations set forth in the 2020 Engagement Letter and all other rights contained therein.

accrues upon the client's receipt of the accountant's work product." *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541 (1994).

Here, CR provided the ROFR calculation to its client, the Partnership, on February 7, 2020. *See* Compl. at ¶ 85.  AMTAX filed this Complaint on February 9, 2023.  Accordingly, AMTAX's malpractice claim is barred by the statute of limitations.

Similarly, AMTAX's breach of fiduciary duty and unjust enrichment claims are also subject to the three year statute of limitations.  See CPLR 214(4); *Kaufman v. Cohen,* 307 A.D.2d 113, 118 (2003) (recognizing that when breach of fiduciary duty claim seeks monetary damages, three year statute of limitation applies); *Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.,* 73 A.D.3d 581, 582 (2010) (three-year statute of limitations applies to claims "sounding in . . . unjust enrichment").  As AMTAX's claims for breach of fiduciary duty and unjust enrichment accrued at the time CR calculated the ROFR on February 7, 2020, such claims are also time barred.  *See Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014) (stating claim for breach of fiduciary accrues at time of breach); *Ingrami v. Rovner*, 45 A.D.3d 806, 807 (2nd Dept. 2007) (recognizing unjust enrichment claim "begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution.").  Accordingly, the Court must dismiss Counts I, II and III of the Complaint as time-barred.

## IV.   THE COURT ALSO SHOULD DISMISS PLAINTIFF'S CLAIMS AS THEY FAIL TO STATE A CLAIM FOR RELIEF.

Even if AMTAX's claims were not barred by the statute of limitations, the claims fail for yet another reason – the Complaint fails to set forth a claim of relief.

### A.   The Complaint Fails To State A Claim For Malpractice.

It is well-settled law in New York that third-party claims against accountants for services are barred when the third-party is not in "privity" with the accountant.  *Ultramares Corporation*

17

*v. Touche*, 255 N.Y. 170 (1931); *see also Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d

461, 464 (2007) (concluding professional malpractice claims against accountant require

underlying relationship be one of contract or functional equivalent of privity); *Ossining Union*

*Free School Dist. v Anderson LaRocca Anderson*, 73 N.Y.2d 417, 419 (1989) (stating non-client

malpractice claim must be based on "bond … so close as to be the functional equivalent of

contractual privity.").

That rule is relaxed under very limited circumstances, not applicable here, for matters

which meet the following three-part test set forth in *Credit Alliance Corp. v. Arthur Andersen &*

*Co.,* 493 N.Y.S.2d 435 (1985):

> (1) the accountants must have been aware that the financial reports were to be used
> for a particular purpose or purposes; (2) in the furtherance of which a known party
> or parties were intended to rely; and (3) there must have been some conduct on the
> part of the accountants linking them to that party or parties, which evinces the
> accountants' understanding of that party or parties' reliance.

*Id.* at 443.  The burden of establishing privity lies with the party claiming a relationship.  Id. at

442.

AMTAX cannot meet its burden to establish a near privity relationship with CR as it cannot

satisfy the *Credit Alliance* test. The first two elements cannot be satisfied.  Although AMTAX

alleges that CR should have been aware that its calculation of the ROFR price would impact

AMTAX's tax liability, the "financial report" prepared by CR (i.e., the ROFR calculation) did not

have the purpose of determining AMTAX's tax liability.  The purpose of the report was to calculate

the ROFR price to allow the Partnership (CR's client) to determine whether TDC properly

exercised its option under the ROR Agreement.

Moreover, AMTAX miserably fails to establish any conduct that links CR to AMTAX.

"Conduct qualifies as 'linking conduct' if it is 'some form of direct contact between the accountant

and the plaintiff, such as face-to-face conversation, the sharing of documents, or other substantive communication between the parties,' that 'evinces the accountant['s] understanding of [plaintiff's] reliance' on his representations." *Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*, 586 F. Supp. 2d 119, 127 (S.D.N.Y. 2008) (internal citations omitted).  The absence of any direct contact between an accountant and the plaintiffs is fatal to a negligence claim. *See Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 76 (2d Cir. 2000).

"Courts have uniformly required more than phone calls, general communications or unacknowledged assertions of reliance in order to establish 'linking conduct.'" *Hous. Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 219 (S.D.N.Y. 2001) (finding one phone call allegedly communicating plaintiff's reliance on defendant's financial statement was not sufficient to satisfy third prong of *Credit Alliance* test); *LaSalle National Bank v. Ernst & Young, LLP*, 729 N.Y.S.2d 671, 675 (1st Dept. 2001) (determining plaintiff's phone call and subsequent correspondence allegedly conveying reliance on certified financial statement constituted no more than "unilateral conduct by the lenders, and not affirmative conduct by [accountant]"); *Parrott v. Coopers & Lybrand, L.L.P.*, 702 N.Y.S.2d 40, 46 (1st Dept.), *aff'd*, 718 N.Y.S.2d 709 (2000) (dismissing accounting malpractice claim where no evidence presented that plaintiff met with accountants).

Here, AMTAX's own Complaint acknowledges that there was no "linking conduct" with respect to CR's preparation of the ROFR price.  In fact, AMTAX alleges that it did not even know that CR performed the ROFR calculation until discovery proceeded in the MA Action and, therefore, there were no communications between the parties.  *See* Compl. at ¶ 103.  AMTAX's Complaint does not allege a single phone call, email or other correspondence between AMTAX and CR to establish "linking conduct" concerning the ROFR calculation or even the Exit Tax

19

Calculations.[12]  This fact was confirmed by Ratti, who testified that he never discussed exit tax calculations with AMTAX.  *See* Peña Dec., Ex. 7 at pp. 45-47.  Given the absence of a privity or even privity-like relationship, the law mandates dismissal of AMTAX's malpractice claim.

**B.    The Court Should Dismiss AMTAX's Breach of Fiduciary Duty, Fraud and Unjust Enrichment Claims as They Are Duplicative of the Malpractice Claim.**

When a plaintiff alleges other causes of action which arise from the same facts as a malpractice claim and does not allege *distinct* damages, courts have not hesitated to dismiss the claims as improperly duplicative. *Mecca v. Shang*, 258 A.D. 2d 569 (2d Dept. 1999) (dismissing plaintiff's claims of breach of fiduciary duty, fraud, negligent misrepresentation, and gross negligence claims as duplicative of malpractice action).  If the basis for all of a plaintiff's claims is the malpractice claims, the duplicative claims fall by the wayside.  *See American Tissue, Inc. v. Andersen*, 275 F. Supp. 2d 398, 405 n.7 (S.D.N.Y. 2003) ("Although [Plaintiff] brings claims for malpractice, breach of contract, and breach of fiduciary duty, these three causes of action boil down to one claim for the provision of deficient accounting services.");  *see also Paladini v. Capossela, Cohen, LLC*, No. 11 CIV. 2252 LAP, 2012 WL 3834655, at *5 (S.D.N.Y. Aug. 15, 2012), *aff'd*, 515 F. App'x 63 (2d Cir. 2013) (dismissing breach of fiduciary duty claim against accountant as duplicative of accounting malpractice claim).

In the instant case, AMTAX's claims for breach of fiduciary duty, unjust enrichment and fraud are clearly duplicative of its time-barred, meritless malpractice claim.  The crux of AMTAX's malpractice claim is that CR improperly calculated the ROFR price.  In purported support of its breach of fiduciary duty claim and unjust enrichment claim, AMTAX merely

---

[12] The sole communication alleged to have occurred between AMTAX and CR concerning the ROFR price and the Exit Tax Calculations is Alden Torch's October 21, 2022 letter where they demanded that CR change its calculation. *See* Complaint at ¶¶ 104-107; *see also* Peña Dec., Ex. 5.  In response to such letter, CR refused to discuss confidential information of its client, the Partnership, with AMTAX.  *See* Pena Dec., Ex. 6.

duplicates its malpractice claim allegations. *See* Compl. at ¶¶ 117-118 (alleging CR breached fiduciary duty " . . . to provide an accurate ROFR Calculation that included AMTAX's Exit Taxes"); *id.* at ¶ 144 (alleging in support of unjust enrichment claim that "[CR's] conduct disadvantaged AMTAX because the General Partner relied on [CR's] improper calculation to argue that [TDC] did not need to pay AMTAX its Exit Taxes in connection with a sale of the Property pursuant to the Section 42(i)(7) ROFR."). The damages sought for these claims are not distinct from the damages under AMTAX's malpractice claim. Accordingly, the claims must be dismissed as duplicative of the malpractice claims.

AMTAX's fraud claim suffers from the same deficiency and must be dismissed. *See Kuruwa v. Meyers*, 823 F.Supp.2d 253, 259 (S.D.N.Y.2011) ("Under New York law, a claim of fraud that duplicates a claim of legal malpractice must be dismissed."); *Tasseff v. Nussbaumer & Clarke, Inc.,* 298 A.D.2d 877, 878, (4th Dept. 2002). Fraud claims arising out of the same set of facts upon which a malpractice claim is based must allege "something more egregious than mere 'concealment or failure to disclose one's own malpractice.'" *White of Lake George, Inc.v. Bell,* 251 A.D.2d 777, 778 (1998).

In the instant case, AMTAX alleges that CR entered into the ". . . January 17, 2020 secret engagement letter [to] conceal[] from AMTAX [that] CR began working at the behest of the General Partner and against the interest of AMTAX." *See* Compl. at ¶ 140. At best, AMTAX alleges that CR concealed its malpractice, which is simply not actionable as a separate independent claim from its malpractice claim. Further, given it does not seek separate damages from its malpractice claim, the fraud claim must be dismissed.

Worse yet, by asserting a fraud claim that is duplicative of the malpractice claim, AMTAX is merely seeking to circumvent the three-year statute of limitations applicable to its malpractice

claim.  This should not be condoned by the Court and further warrants dismissal of the claim.  *See Abramo v. Teal, Becker & Chiarmonte, CPAs,* 713 F. Supp. 2d 96, 109 (N.D.N.Y. 2010) ("[T]his Court may not permit [a p]arty to avoid [the 3 year statute of limitations] by styling their professional negligence claims as any number of other causes of action without alleging sufficient facts and damages to render those claims independent.").

### C.    AMTAX's Breach of Fiduciary Duty Claim Also Fails to State a Claim for Relief.

"The elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *see also Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir.1986).

In New York, the accountant-client relationship does not create a fiduciary duty.  *See Friedman v. Anderson*, 803 N.Y.S.2d 514, 516 (1st Dept. 2005) ("Generally, there is no fiduciary relationship between an accountant and his client"); *see also Bitter v. Renzo*, 101 A.D.3d 465, 465 (1st Dept. 2012) ("The duty owed by an accountant to a client is generally not fiduciary in nature."). Rather, a fiduciary duty relationship is "founded upon trust and confidence" and requires a showing of "special circumstances" that transform the relationship into a fiduciary one.  *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995).  Absent such special circumstances, accountants are not fiduciaries to their clients let alone to third parties.  *See Friedman*, 803 N.Y.S.2d at 516; *see also Warnaco Group., Inc. Sec. Litigation*, 388 F.Supp.2d 307, 318 (S.D.N.Y. 2005); *Hamer v. Chessman*, 129 A.D.2d 491, 492 (1st Dept. 1987).

As New York law does not create a fiduciary duty between an accountant and its actual clients, it certainly does not recognize a fiduciary duty between CR and its non-client, AMTAX,

who has not alleged a single communication that it had with CR concerning the calculations at issue.  Accordingly, as a matter of law, the breach of fiduciary duty claim fails.[13]

### D.  The Court Should Also Dismiss AMTAX's Fraud Claim as AMTAX Fails to Plead Fraud with Particularity.

AMTAX has also failed to set forth a claim for fraud and certainly not with the particularity required by Fed. R. Civ. P. 9(b).  In a feeble attempt to manufacture a claim for fraud, AMTAX first alleges that CR misrepresented that it would provide impartial and independent advice to protect AMTAX's tax status.  *See* Compl. at ¶ 139.

To state a claim for common law fraud, a plaintiff must allege the following: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[ ] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss[.]" *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 445-46 (S.D.N.Y. 2014).

The Court can easily dispel with AMTAX's fraud claim as AMTAX has not alleged a representation of material fact that was false for AMTAX to even rely on.  Indeed, the Complaint is devoid of any allegation that CR even communicated with AMTAX.  The Complaint does not allege a single email, letter, telephone call or meeting that CR had with AMTAX.  In the absence of any communication between parties, no representation was made by CR to AMTAX and, as such, the fraud claim fails.

---

[13] Even if the law did not preclude AMTAX's breach of fiduciary duty claim, the MA Court found that the facts also fail AMTAX.  After the MA Court had the benefit of a complete record, the MA Court dismissed AMTAX's breach of fiduciary duty claim against the TDC Parties as the ". . . calculation of the Purchase Price reflected a **colorable interpretation of the language in the ROR Agreement and Section 42 . . . and a legitimate dispute such as this, without more does not amount to breach of duty of loyalty and good faith**."  *See* Peña Dec., Ex. 1 at p. 23 (emphasis added).

Cognizant that its Complaint does not allege a single communication between AMTAX and CR, AMTAX attempts to fabricate an alleged omission by asserting that CR concealed the 2020 Engagement Letter.  AMTAX fares no better with its claim for fraudulent concealment.  A claim for fraudulent concealment must show: "(1) failure to discharge a duty to disclose, (2) an intention to defraud, or scienter, (3) reliance, and (4) damages." *TVT Records v. Island DefJam Music Group*, 412 F.3d 82, 90–91 (2d Cir.2005).  "[A] fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *See also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291-92 (2d Cir.2006).  A duty to disclose arises when there is a fiduciary or confidential relationship or one party's superior knowledge of facts renders nondisclosure unfair. *Barrett v. Freifeld*, 908 N.Y.S.2d 736, 737-38 (2010).  As to the latter, the nondisclosing party must be aware that the plaintiff is acting on the basis of mistaken knowledge. *See Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank,* 57 F.3d 146, 155 (2d Cir. 1995).

As a matter of law, AMTAX's fraudulent concealment claim fails.  Stripped to its core, AMTAX alleges that CR committed a fraud because it entered into an engagement letter with the Partnership – its client - and did not disclose such engagement letter to non-client, AMTAX.  As set forth above, there is no fiduciary duty between the parties nor has AMTAX alleged (nor can it allege) that CR had knowledge that AMTAX was operating under mistaken knowledge.  Given the lack of duty, AMTAX cannot establish any claim for fraudulent concealment.

Finally, AMTAX has not pled CR's intent to defraud with the particularity required by Fed. R. Civ. P. 9(b).  Long-standing case law in the Second Circuit requires plaintiff to "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995). "The requisite 'strong inference' of fraud may be established either (a)

by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

Here, AMTAX merely alleges that in September 2019, representatives of the General Partner communicated by email "the current strategy is to go back to [Alden Torch] with $0 above assumption of existing debt" (*see* Compl. at ¶ 79).  CR was not copied on such email (*see* Peña Dec., Ex. 8), and there is no allegation that CR was even aware of that strategy.  The Complaint goes on to allege that "in furtherance of this 'strategy'" – that was unknown to CR – CR entered into the 2020 Engagement Letter. Compl. at ¶ 80. These allegations are wholly insufficient to allege a fraudulent intent on CR's part under Fed. R. Civ. P. 9(b).

### E.    AMTAX's Claim for Unjust Enrichment Fails to State a Claim.

"To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F.Supp.2d 164, 177 (S.D.N.Y.2004) (internal quotations omitted); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir.2011).

"Unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists. This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp.2d 275, 311 (S.D.N.Y. 1998) (internal citation omitted); *see also U.S. East Telecomm., Inc. v. U.S. West Commc'n Servs., Inc.*, 38 F.3d 1289, 1296 (2d Cir. 1994) (recognizing that a "valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

As a matter of law, AMTAX's unjust enrichment claim fails as its own Complaint acknowledges that the ROFR calculation was conducted in accordance with a contract – namely, the 2020 Engagement Letter. *See* Compl. at ¶¶ 6, 82, 118.  As such, the existence of the 2020 Engagement Letter is the death knell to AMTAX's unjust enrichment claim.

Even in the absence of the 2020 Engagement Letter, the Complaint fails to state a claim for unjust enrichment.  AMTAX alleges that "[CR] received a benefit *at AMTAX's expense* by virtue of the compensation that it received from the [2020 Engagement Letter] to provide a calculation of the Section 42(i)(7) purchase price, which is part of a scheme by the accounting firm to ingratiate itself to the low-income housing nonprofit community . . . ."  See Compl., ¶ 143.  AMTAX's allegations that a benefit conferred at its expenses are "[t]hreadbare recitals of the elements of a cause of action . . ." that should not be accepted as true. *Iqbal*, 556 U.S. at 678. As not a single allegation in the Complaint alleges that AMTAX – in lieu of the Partnership – paid CR's compensation, AMTAX's claim for unjust enrichment fails.

**F.     The Complaint Also Fails to State a Claim for Relief for Damages.**

To set forth a claim for relief, AMTAX must allege that it has sustained damages by CR's conduct.  AMTAX alleges that it has incurred "more than $500,000 in legal fees and costs . . . in the [MA] Action . . . and at least $8.5 million in Exit Taxes that AMTAX is entitled to receive upon a sale of the Property . . ." *See* Compl. at ¶ 111.  The MA Court already determined that AMTAX was not damaged as the sale of the Property did not proceed. *Id.* at ¶ 23.  As no sale occurred of the Property and the MA Court agreed with AMTAX's proposed calculation of the ROFR price, AMTAX cannot set forth a claim for $8.5 million in damages.[14]

---

[14] At best, AMTAX's damages are limited to the attorneys' fees that it incurred for the MA Action.  However, in the MA Action, AMTAX did not merely challenge the propriety of the ROFR calculation.  AMTAX also alleged that the Partnership could not proceed with a sale of the Property absent its consent – a proposition advanced by AMTAX that

## RESERVATION OF RIGHTS

CR reserves the right to argue that AMTAX's claims are barred by the MA Decision under the doctrine of collateral estoppel. All elements of collateral estoppel have been met except for finality of judgment.[15]  Once the MA Decision is final, it precludes AMTAX's claims against CR as the MA Court specifically found that the calculation was "colorable" and did not breach the duty of loyalty or good faith.

Regardless of the outcome of the MA Action, AMTAX's claims against CR fail. If the MA Decision is upheld, AMTAX is collaterally estopped from pursuing its claims against CR.[16] If the MA Decision is reversed, the ROFR calculation will be upheld.  This provides a basis to stay this action pending further outcome before the MA Court.  CR recognizes that the Court declined to further stay this action pending the MA Action and respectfully submits that such issue should be reconsidered by the Court.[17]

## CONCLUSION

Based on the foregoing, this Court lacks subject matter jurisdiction over AMTAX's state law claims and dismissal is required pursuant to Fed. R. Civ. P. 12(b)(1).  In the event this Court finds that this case falls within the narrow exception for which federal courts will exercise

---

was not accepted by the MA Court.  Accordingly, the Complaint fails to set forth a claim for relief for all of the attorneys' fees AMTAX incurred in the MA Action.

[15] The MA Decision is not yet final as it remains subject to a motion for reconsideration filed by the TDC Parties.  *See Sparks Energy Gas, LP v. Toxikon Corp.*, 908 F. Supp.2d 267, 273 (D. Mass 2012) (finding decision not final to give preclusive effect when decision is subject to motion for reconsideration).

[16] As the MA Court dismissed AMTAX's breach of fiduciary duty claim against the TDC Parties arising from the calculation, the MA Decision bars AMTAX's breach of fiduciary duty claim here.  Further, the MA Court's finding that the calculation was in good faith is fatal to AMTAX's remaining claims against CR.  The factual finding that CR's calculation was "colorable" precludes a determination that CR deviated from the standard of care of accountants. *See Hatfield v. Herz*, 109 F. Supp. 2d 174, 185 (S.D.N.Y. 2000) (recognizing that mere "disagreement" with a professional's choices, where "reasonable … minds may differ" is insufficient to state a claim for malpractice).  Given the MA Court found the calculation was performed in good faith, AMTAX cannot establish that CR had the intent to defraud plaintiff by conducting such calculation or "that equity and good conscience require defendants to make restitution" as necessary to establish unjust enrichment.  *Kidz Cloz, Inc.*, 320 F.Supp. 2d at 177.

[17] At the time the Court decided not to further stay this action, the Court did not have the benefit of the within motion.  Upon review of the within motion, CR respectfully submits that the Court should stay the action pending the conclusion of the MA Action.

jurisdiction over state law claims, the Complaint must be dismissed, pursuant to Fed. R. Civ. P.

12(b)(6), as it fails to state a claim for relief.


Dated: New York, New York
       September 1, 2023

Respectfully submitted,

**NORRIS McLAUGHLIN, P.A.**

*/s/ Melissa A. Peña*
Melissa A. Peña
Benjamin D. Schwartz
7 Times Square, 21st Floor
New York, NY  10036
Tel: (212) 808-0700
Email: mapena@norris-law.com
Email: bschwartz@norris-law.com

**ATTORNEYS FOR DEFENDANT
COHNREZNICK LLP**