**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMTAX HOLDINGS 227, LLC.,

*Plaintiff,*

v.

COHNREZNICK LLP,

*Defendants.*

Docket No.: 1:23-cv-01124-NRB

**PLAINTIFF AMTAX HOLDINGS 227, LLC'S MEMORANDUM OF LAW IN**
**OPPOSITION TO COHNREZNICK LLP'S MOTION TO DISMISS**

**GLENN AGRE BERGMAN & FUENTES LLP**

L. Reid Skibell
Olga Lucia Fuentes Skinner
Avelino A. Garcia
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Tel: (212) 970-1600

*Attorneys for AMTAX Holdings 227, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................IV

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS..................................................................................3

    I. The Federal LIHTC Program and Section 42 of the Code........................3

    II. The Partnership and CohnReznick's Critical Role.................................5

    III. CohnReznick Turns on AMTAX to Curry Favor with TDC.................6

ARGUMENT......................................................................................................7

    I. This Court has Subject Matter Jurisdiction. ..........................................7

    II. The Court Should Deny The Motion To Dismiss
    For Failure to State a Claim. ....................................................................12

        a. Colorado Law Applies to AMTAX's Claims. ...............................12

        b. AMTAX's Claims Are Not Time Barred.......................................13

        c. The Complaint States a Claim for Fraud. ......................................15

            i. CohnReznick Had a Duty to Disclose
            Material Information to AMTAX.............................................16

            ii. CohnReznick Concealed Material Information
            with the Intent to Deceive AMTAX.......................................18

            iii. AMTAX Reasonably Relied on CohnReznick. ...............19

        d. The Complaint States a Claim for Breach of Fiduciary Duty. .......19

            i. CohnReznick Acted as a Fiduciary to AMTAX. ..................19

            ii.CohnReznick Breached its Fiduciary Duty to AMTAX. ....21

        e. The Complaint States a Claim for Professional Negligence. .........21

i. CohnReznick Owed AMTAX a Duty of Care ..................................... 21

ii. CohnReznick Breached Its Professional Duty of Care. ..................... 24

iii. CohnReznick's Breach Caused AMTAX's Injuries. ........................ 25

f. The Complaint States a Claim for Unjust Enrichment. ................................. 26

g. AMTAX Alleges Cognizable Damages. ........................................................ 27

**III. Collateral Estoppel Does Not Apply** ........................................................ **28**

**CONCLUSION** .................................................................................................. **29**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Airy v. Guy-Icon, Inc.*,
 2020 WL 12948360 (Colo. Dist. Ct. Sep. 4, 2020) .................................................. 17

*Amtax Holdings 227, LLC v. Tenants' Development II Corp.*,
 15 F.4th 551 (1st Cir. 2021) ................................................................................... 2, 8

*Anixter v. Home-Stake Production Co.*,
 77 F.3d 1215 (10th Cir. 1996) ..................................................................................... 17

*Atl. Richfield Co. v. Farm Credit Bank of Wichita*,
 226 F.3d 1138 (10th Cir. 2000) ............................................................................ 19, 20

*Babcock v. Jackson*,
 191 N.E.2d 279 (N.Y. 1963) ................................................................................... 13

*Beck v. Am. Honda Fin. Corp.*,
 2020 WL 9424370 (D. Colo. Mar. 3, 2020) ........................................................... 16

*Berger v. Dixon & Snow, P.C.*,
 868 P.2d 1149 (Colo. App. 1993) ........................................................................... 27

*Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*,
 412 P.3d 751 (Colo. Ct. App. 2015) ....................................................................... 23

*Boyd v. Garvert*,
 9 P.3d 1161 (Colo. Ct. App. 2000) ......................................................................... 25

*Brancato v. Panio*,
 2013 WL 12324483 (D. Colo. Feb. 21, 2013) ........................................................ 25

*Brash v. Richards*,
 195 A.D.3d 582 (2d Dep't 2021) ............................................................................. 14

*Braun v. City of New York*,
 284 F. Supp. 3d 572 (S.D.N.Y. 2018) ..................................................................... 28

*Bullmore v. Ernst & Young Cayman Islands*,
 45 A.D.3d 461 (1st Dep't 2000) .............................................................................. 12

*Burns v. Pohto*,
 2016 WL 9735750 (D. Colo. June 28, 2016) .......................................................... 25

*Central Bank Denver v. Mehaffy, Rider Windholz & Wilson*,
   865 P.2d 862 (Colo. Ct. App. 1994) ................................................................. 23

*Church Mut. Ins. Co. v. Coutu*,
   2018 WL 1517022 (D. Colo. Mar. 28, 2018) ................................................... 17

*Command Commc'ns, Inc. v. Fritz Companies, Inc.*,
   36 P.3d 182 (Colo. App. 2001) ......................................................................... 24

*Credit Alliance Corp. v. Arthur Anderson & Co.*,
   493 N.Y.S.2d 435 (1985) .................................................................................. 24

*Dagostine v. Pendleton*,
   2022 WL 16950281 (S.D. W.Va. Nov. 15, 2022) ........................................... 11

*De Sole v. Knowedler Gallery, LLC*,
   137 F.Supp.3d 387 (S.D.N.Y. 2015) ............................................................... 15

*Destefano v. Grabrian*,
   763 P.2d 275 (Colo. 1988) ............................................................................... 19

*Doe v. United States*,
   76 F.4th 64 (2d Cir. 2023) ............................................................................... 15

*European Motorcars of Littleton, Inc. v. Mercedes–Benz USA, LLC*,
   2017 WL 2629133 (D. Colo. June 19, 2017) ................................................. 16

*F.D.I.C. v. Refco Grp., Ltd.*,
   989 F. Supp. 1052 (D. Colo. 1997) ................................................................. 16

*First Nat. Bank of Meeker v. Theos*,
   794 P.2d 1055 (Colo. App. 1990) ................................................................... 16

*Fischer v. Fischer*,
   2021 WL 1720213 (N.D. Tex. Apr. 30, 2021) ............................................... 12

*Forest Park Pictures v. Universal Tel. Network, Inc.*,
   683 F.3d 424 (2d Cir. 2012) ............................................................................ 12

*Glob. Fin. Corp. v. Triarc Corp.*,
   93 N.Y.2d 525 (1999) ....................................................................................... 13

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016) .............................................................................. 7

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
545 U.S. 308 (2005) ........................................................................................ 8

*Greenberg v. Perkins*,
845 P.2d 530 (Colo. 1993) ............................................................................ 21

*Gunn v. Minton*,
568 U.S. 251 (2013) ........................................................................................ 8

*Hice v. Lott*,
223 P.3d 139 (Colo. App. 2009) .................................................................. 24

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
270 F. Supp. 3d 716 (S.D.N.Y. 2017) ......................................................... 13

*In re Abound Solar Manufacturing, LLC*,
547 B.R. 611 (D. Del. Bankr. 2016) ............................................................ 22

*In re Behrends*,
2017 WL 4513071 (D. Colo. April 10, 2017) ............................................. 14

*In re Bloom*,
622 B.R. 366 (Bankr. D. Colo. 2020) .......................................................... 18

*In re CITX Corp., Inc.*,
2005 WL 1388963 (E.D. Pa. June 7, 2005) ................................................. 22

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
762 F. Supp. 2d 942 (S.D. Tex. 2010) ......................................................... 22

*In re Synergen, Inc. Sec. Litig.*,
863 F. Supp. 1409 (D. Colo. 1994) .............................................................. 18

*Jefferson County School Dist. R-1 v. Justus By and Through Justus*,
725 P.2d 767 (Colo. 1986) ............................................................................ 23

*Koch v. Greenberg*,
14 F.Supp.3d 247 (S.D.N.Y. 2014) .............................................................. 18

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997) ....................................................................... 13

*Lemle v. Regen, Benz & MacKenzie, C.P.A.'s, P.C.*,
165 A.D.3d 414 (1st Dep't 2018) ................................................................ 15

*Level 3 Commc'ns, LLC v. Liebert Corp.*,

    535 F.3d 1146 (10th Cir. 2008) ........................................................... 16

*Mabry v. Tom Stanger & Co.*,

    33 P.3d 1206 (Colo. App. 2001) ........................................................... 21

*Marquest Medical Products, Inc. v. Daniel, McKee & Co.*,

    791 P.2d 14 (Colo. Ct. App. 1990) ........................................................ 23

*Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver*, N.A.,

    892 P.2d 230 (Colo. 1995) ........................................................... 13, 23

*Metropolitan Gas Repair Serv., Inc. v. Kulik*,

    621 P.2d 313 (Colo. 1980) ................................................................... 22

*MidCities Metropolitan Dist. No. 1 v. U.S. Bank Nat. Ass'n*,

    2013 WL 3200088 (D. Colo. June 24, 2013) ......................................... 26

*Moses v. Diocese of Colorado*,

    863 P.2d 310 (Colo. 1993) ................................................................... 20

*Murphy v. Schaible, Russo & Company, C.P.A.'s, LLP*,

    2021 WL 3931223 (D. Colo. Sept. 2, 2021) ......................................... 20

*N. Colo. Med. Ctr., Inc. v. Comm. On Anticompetitive Conduct*,

    914 P.2d 902 (Colo. 1996) ................................................................... 25

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,

    824 F.3d 308 (2d Cir. 2016) ..................................................... 8, 9, 10, 11

*Norex Petroleum Ltd. v. Blavatnik*,

    23 N.Y.3d 665 (N.Y. 2014) ................................................................. 13

*P.W. v. Children's Hospital Colorado*,

    364 P.3d 891 (Colo. 2016) ................................................................... 24

*Paine, Webber, Jackson & Curtis, Inc. v. Adams*,

    718 P.2d 508 (Colo. 1986) ................................................................... 20

*Poly Trucking, Inc., v. Concentra Health Servs., Inc.*,

    93 P.3d 561 (Colo. Ct. App. 2004) ...................................................... 16

*Prospect Dev. Co., Inc. v. Holland & Knight, LLP*,

    433 P.3d 146 (Colo. Ct. App. 2018) .......................................... 12, 13, 14

*Rantz v. Kaufman*,
  109 P.3d 132 (Colo. 2005) .......................................................................... 13

*Redden v. SCI Colorado Funeral Services, Inc.*,
  38 P.3d 75 (Colo. 2001) ............................................................................. 24

*Rocky Mountain Festivals, Inc. v. Parsons Corp.*,
  242 P.3d 1067 (Colo. 2010) ....................................................................... 27

*S.E.C. v. Caserta*,
  75 F. Supp. 2d 79 (E.D.N.Y. 1999) ........................................................... 22

*Salzman v. Bachrach*,
  996 P.2d 1263 (Colo. 2000) ....................................................................... 27

*Schafer v. Direct Energy Servs., LLC*,
  845 F. App'x 81 (2d Cir. 2021) .................................................................... 7

*Shell Western E&P, Inc. v. Dolores County Bd. Of Com'rs*,
  948 P.2d 1002 (Colo. 1997) ....................................................................... 15

*Sheridan v. New Vista, LLC*,
  406 F.Supp.2d 789 (W.D. Mich. 2005) ...................................................... 11

*Southern New England Telephone Co. v. Global NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ....................................................................... 10

*State ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*,
  592 F. Supp. 3d 183 (S.D.N.Y. 2022) ........................................................ 10

*Tantaros v. Fox News Network, LLC*,
  12 F.4th 135 (2d Cir. 2021) ................................................................... 8, 10

*Tenants' Dev. Corp. v. AMTAX Holdings 227*,
  2020 WL 7646934 (D. Mass. Dec. 23, 2020) .............................................. 8

*Tuper v. North Adams Ambulance Service, Inc.*,
  428 Mass. 132 (Mass. 1998) ...................................................................... 28

*United Blood Services, a Div. of Blood Systems, Inc. v. Quintana*,
  827 P.2d 509 (Colo. 1992) ......................................................................... 21

*Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*,
  9 N.Y.3d 1 (N.Y. 2007) .............................................................................. 12

*Wood v. Houghton Mifflin Harcourt Pub. Co.*,

    569 F.Supp.2d 1135 (D. Colo. 2008) ...................................................................... 18

**Statutes**

28 U.S.C. § 1331 ................................................................................................................. 7

28 U.S.C. § 1340 ............................................................................................................... 11

C.R.S.A. § 13-80-101 ....................................................................................................... 13

C.R.S.A. § 13-80-102 ....................................................................................................... 13

C.R.S.A. § 13-80-108(1) ................................................................................................... 14

Section 42 ........................................................................................................................... 3

Section 42(i)(7) of the Internal Revenue Code .................................................... Passim

Plaintiff AMTAX Holdings 227, LLC ("AMTAX" or "Plaintiff") respectfully submits this memorandum of law in opposition to CohnReznick LLP's ("CohnReznick" or "Defendant") motion to dismiss.[1]

## PRELIMINARY STATEMENT

In its motion, CohnReznick attempts to characterize itself as an innocent bystander that has been drawn into a conflict between AMTAX and the general partner of a low-income housing tax credit ("LIHTC") partnership. According to CohnReznick, it was merely the accountant to that partnership, and thus owed no duties to AMTAX even though AMTAX was the 99.99% beneficial owner of the partnership. CohnReznick also claims that the dispute between AMTAX and TDC has been effectively resolved by the decisions of other courts, including a decision by the First Circuit supposedly rejecting AMTAX's theory of subject matter jurisdiction.

While that narrative may be convenient for CohnReznick, it also happens to be false. To begin with, this case purely concerns CohnReznick and its misconduct. CohnReznick advised AMTAX—not only the partnership, but AMTAX directly—for decades using calculations that were based on a single, unfaltering interpretation of the federal tax provision at the center of this dispute, Section 42(i)(7) of the Internal Revenue Code. Consistent with that advice, CohnReznick has publicly represented, and continues to represent, that there was only one way to interpret Section 42(i)(7). Nevertheless, the firm secretly entered into an engagement with Tenants' Development II, L.P. ("TDC"), the LIHTC partnership's general partner, to perform a right of first refusal ("ROFR") calculation using a sham interpretation of Section 42(i)(7) that was at odds with its prior advice and accepted industry practice.

---

[1] Citations to "Compl. __" are to the Complaint in this action. Citations to "Motion __" are to CohnReznick's Memorandum of Law in Support of its Motion to Dismiss the Complaint (ECF No. 33-10.) Defined terms used herein have the same meaning they have in the Complaint.

This would be the equivalent of a lawyer advising a party that it had an easement to access a neighbor's property for more than twenty years, and then surreptitiously writing a memorandum for the neighbor to use against that party stating that there is no such easement.  In short, CohnReznick abandoned its fiduciary and professional obligations to AMTAX to curry favor with TDC and other developer general partners in the LIHTC industry.

As for subject matter jurisdiction, in the decision CohnReznick relies on to argue for dismissal, the First Circuit expressly declined to decide the issue that is before this Court: Does the interpretation of Section 42(i)(7) of the Internal Revenue Code and related Treasury regulations raise a substantial federal question?  *See Amtax Holdings 227, LLC v. Tenants' Development II Corp.*, 15 F.4th 551, 558 (1st Cir. 2021) (declining to rule because the "question is not properly before us").  The only court to directly address that question is the United States District Court for the Eastern District of New York, which found in *Riseboro Community Inc. v. SunAmerica Housing Fund No. 682* that the proper meaning of Section 42(i)(7) is a substantial and disputed issue of federal tax law that should be decided in federal court.  401 F.Supp.3d 367 (E.D.N.Y. 2019) ("*Riseboro*").  CohnReznick fails to address the well-reasoned analysis in *Riseboro*, let alone provide this Court with a justification to depart from its holding.

And while CohnReznick tries to hide behind certain New York decisions that are favorable for accountants, it, quite tellingly, neglects to perform a choice of law analysis.  Although AMTAX has viable claims under New York law, that is academic because New York law is inapplicable here.  Under well-settled choice of law principles, Colorado law applies because AMTAX is based there, and its injuries were suffered in Colorado.  All of CohnReznick's arguments fall away when analyzed using the correct law.  The statute of limitations does not bar AMTAX's claims because those claims did not accrue until AMTAX discovered CohnReznick's deception during discovery

2

in another action.  And AMTAX has adequately alleged that its longstanding relationship with CohnReznick and the crucial role of accountants in LIHTC partnerships created fiduciary duties, professional duties, and an obligation to disclose material information regarding the status of AMTAX's LIHTC investment, all of which were breached by CohnReznick.  Accordingly, the Court should deny CohnReznick's motion.

## <u>STATEMENT OF FACTS</u>

### I.   **The Federal LIHTC Program and Section 42 of the Code.**

Congress created the federal Low-Income Housing Tax Credit Program ("LIHTC") as part of the Tax Reform Act of 1986 to encourage private investment in affordable housing by providing federal tax credits to owners of affordable housing projects.  (Compl. ¶¶ 24, 26.)  These tax credits are earned over a fifteen-year period referred to in the industry as the "compliance period." (*Id.* ¶ 26.)

LIHTC tax credits may be used by bona fide "owners" of affordable housing properties and only in an amount proportionate to such ownership.  (*Id.* ¶ 27.)  As a result, LIHTC projects are typically structured as a limited partnership between one or more investor limited partners and one or more general partners, with the investor limited partners providing 99% or more of the necessary capital and holding a commensurate ownership interest.  (*Id.* ¶ 27-28.)  Further, under the longstanding "economic substance" doctrine of tax law, an investor is deemed an owner for tax purposes—and thus eligible to receive tax credits and other tax benefits—only if the investment has economic substance apart from the tax benefits, including upside potential and downside risk. (*Id.* ¶ 29.)

Given the federal tax credits that form the basis of the LIHTC program under the Internal Revenue Code (the "Code"), LIHTC partnerships have heightened tax considerations compared with a typical partnership.  (Compl. ¶ 30.)  Accordingly, accountants, such as CohnReznick, play

an outsized role in safeguarding the investor limited partner's tax benefits that are central to the proper functioning of the LIHTC program.  (*Id*.)

This dispute focuses on a safe harbor that was added by Congress in 1989, 26 U.S.C. § 42(i)(7) ("Section 42(i)(7)").  This provision authorizes owners of LIHTC properties to grant certain eligible stakeholders a ROFR to buy the property, after the compliance period, for an amount not less than a statutory minimum price that is unrelated to the fair market value of the property (the "42(i)(7) Price").  (*Id.* ¶ 32.)  Section 42(i)(7) describes the 42(i)(7) Price as follows:

> The minimum purchase price under this subparagraph is an amount equal to the sum of –

(i)     The principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii)    ***All Federal, State, and local taxes attributable to such sale***. Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii).

(*Id*. ¶ 33 (emphasis added).)

That 42(i)(7) Price is known in the industry as the "debt plus taxes" price.  (*Id.* ¶ 34.)  It was put in place to protect the investor limited partner's investment by ensuring that, upon a sale of a LIHTC partnership's primary asset pursuant to a Section 42(i)(7) ROFR, the investor limited partner would receive a minimum distribution equal to their tax liability, plus the amount of any tax liability attributable to the minimum distribution, and therefore be made whole from a tax perspective.  (*Id*.)  CohnReznick and various other industry participants have publicly accepted that this is the correct interpretation of Section 42(i)(7).  (*See Id.* ¶¶ 36-42.)

A related concept is Minimum Gain, which is a calculation that Treasury Regulations require to be performed when a partner's capital account goes negative.  Minium Gain equals the minimum amount of gain realized upon the sale of a property, which must be sufficient to satisfy that negative account balance.  (Compl. ¶¶ 43-51.)  Minimum Gain is relevant here because, as

explained below, CohnReznick's assurances that AMTAX's negative capital account balance would not run afoul of Minimum Gain requirement were predicated on the conventional "debt plus taxes" interpretation of the Section 42(i)(7) ROFR price.

## II.  The Partnership and CohnReznick's Critical Role.

The Partnership—Tenants' Development II, LP—is a Massachusetts limited partnership formed in 2003 for the purpose of owning and operating an affordable housing development (the "Property"). (*Id*. ¶¶ 9, 20.)  AMTAX is the Partnership's limited partner, and TDC is the Partnership's general partner.  (*Id*. ¶¶ 10,14.)  In exchange for $12 million in capital to redevelop the Property, AMTAX received a 99.99% ownership stake in the Partnership and the corresponding right to tax credits and other tax benefits generated by the Property.  (*Id*. ¶ 22.)

CohnReznick has served as the independent auditor and tax preparer for the Partnership since AMTAX entered the Partnership in 2003.  (*Id*. ¶ 49.)  CohnReznick has provided various professional services, including, but not limited to, preparing annual tax returns and audits for the Partnership, as well as preparing K-1 tax forms for AMTAX and the Partnership's other partners. (*Id*.)  CohnReznick also regularly confirmed capital account balances and performed Minimum Gain calculations for AMTAX.  (*Id*.)  In performing these calculations, CohnReznick relied solely on Minimum Gain to support AMTAX's negative capital account, which was more than $22 million as of December 31, 2021.  (*Id*. ¶¶ 50-51.)

CohnReznick also repeatedly prepared a calculation of taxes AMTAX would incur upon a sale of the Property, including in connection with a sale under Section 42(i)(7) (the "Exit Tax Calculations").  (Compl. ¶ 57.)  CohnReznick provided these Exit Tax Calculations to AMTAX to review and evaluate.  (*Id*.)  These calculations were critical because they amounted to the culmination of all the tax work CohnReznick had performed since 2003 and were necessary to ensure that the tax benefits AMTAX received over the life of the Partnership would not be

compromised.  (*Id.*)  Given the importance of these calculations—particularly in light of AMTAX's substantial negative capital account—and CohnReznick's prominence in the LIHTC industry, AMTAX had a relationship of trust and confidence with CohnReznick, and relied upon the firm to be honest, fair, and transparent regarding the critical Exit Tax Calculations.  (*Id.* ¶¶ 58-59.)  CohnReznick's calculations accurately reflected that AMTAX would receive a gain on sale of the Property in an amount equal to its negative capital account balance, which gain would result in Exit Taxes to AMTAX of millions of dollars.  (*Id.* ¶ 69.)  CohnReznick understood that the Exit Taxes represented "the payment due to [AMTAX] when the ROFR is exercised," which "needs to be paid to [AMTAX] in cash" under Section 42(i)(7).  (Compl. ¶ 74.)

### III.  CohnReznick Turns on AMTAX to Curry Favor with TDC.

In September 2019, TDC espoused a strategy to force AMTAX out of the Partnership and to do so without paying AMTAX a sum sufficient to cover its Exit Taxes.  (*Id.* ¶ 79.)  In furtherance of this strategy, CohnReznick and TDC entered into a secret side engagement agreement in January 2020 pursuant to which CohnReznick agreed to provide the Partnership a different 42(i)(7) Price calculation that excluded AMTAX's projected Exit Taxes upon a sale of the Property.  (*Id.* ¶ 80.)  CohnReznick did not disclose this blatant conflict of interest despite an accountant's duty to disclose such a conflict.  (*Id.* ¶ 84.)  CohnReznick's new methodology was directly at odds with CohnReznick's prior Exit Tax Calculations and Minimum Gain analysis, and intentionally violated CohnReznick's duties to AMTAX.  (*Id.* ¶ 81.)  Further, this methodology was directly at odds with the Internal Revenue Code, the Partnership Agreement, and CohnReznick's own prior statements and analysis.  (*Id.* ¶¶ 40, 74, 83.)

The secret engagement letter ultimately yielded a "Right of First Refusal Calculation" that did not include any amounts attributable to AMTAX's Exit Taxes (the "Sham ROFR Calculation"), which CohnReznick provided to TDC on February 7, 2020.  (Compl. ¶ 85.)

AMTAX was not aware that CohnReznick had performed this calculation until discovery revealed that fact in a separate lawsuit.  (*Id.* ¶ 86.)  CohnReznick knew this calculation was erroneous and, thus, it failed to exercise the skill, knowledge, and judgment generally possessed by members of the accounting profession and violated its professional and fiduciary duties to AMTAX.  (*Id.* ¶¶ 88-93.)

The Sham ROFR Calculation was ultimately weaponized by TDC in its attempt to force a sale of the Property at a price that did not include AMTAX's Exit Taxes.  (*Id.* ¶¶ 94-99.)[2] As a result, AMTAX had to enter into a prolonged and costly dispute with TDC that would have been unnecessary had CohnReznick complied with its fiduciary and professional obligations.  (*Id.* ¶¶ 100-101.)

## **ARGUMENT**

### **I.  This Court has Subject Matter Jurisdiction.**

This action revolves around the meaning and application of federal tax law, and the parties' dispute over that meaning can and should be decided by a federal court exercising its jurisdiction over claims arising under federal law.  *See* 28 U.S.C. § 1331.

Most of CohnReznick's jurisdictional argument is predicated on a misstatement of what was decided in a separate Massachusetts litigation between AMTAX and TDC (the "MA Action"). Contrary to CohnReznick's claim (*see* Motion at 10-11), the First Circuit expressly stated that ***it was not asked*** to decide whether claims requiring interpretation of Section 42(i)(7) would support

---

[2] CohnReznick relies on certain documents outside the pleadings with respect to its Rule 12(b)(6) arguments.  But "[b]ecause a Rule 12(b)(6) motion challenges the complaint… a court adjudicating such a motion may review only a narrow universe of materials*.* [] [courts] do not look beyond 'facts stated on the face of the complaint…" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Merely mentioning a document" does not deem a document 'integral'."  *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021).  Accordingly, ECF Nos. 33-2, 33-3, 33-4, 33-5, 33-8 and 33-9 should be disregarded.

federal question jurisdiction.  *Amtax Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551, 558 (1st Cir. 2021) (declining to address the matter because the "question is not properly before us").   That is because, unlike here, the Massachusetts litigation dealt primarily with the interpretation of the partnership agreement between AMTAX and TDC, not the proper interpretation of Section 42(i)(7).  *See Tenants' Dev. Corp. v. AMTAX Holdings 227*, 2020 WL 7646934, at *3 (D. Mass. Dec. 23, 2020) (focusing on the issue of contractual interpretation).  As explained below, the relevant authorities instead are *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016) ("*Jacobson*") and *Riseboro*, which both hold that claims requiring the interpretation of the federal tax code raise a substantial federal question.

The so-called *Grable-Gunn* test holds that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 140-41 (*quoting Gunn v. Minton*, 568 U.S. 251, 258 (2013)).  This test is based on the "'commonsense notion that a federal court ought to be able to hear' state law claims that 'turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'"  *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 140 (2d Cir. 2021) (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005)).  Given that AMTAX's claims turn on substantial questions of federal tax law, that "commonsense notion" fully supports the Court's jurisdiction over this case.

*First*, a federal issue is "necessarily raised" here because AMTAX's claims require interpretation of the Code, including Section 42(i)(7) and related Treasury Regulations, and Minimum Gain calculations.   AMTAX's claims specifically allege that: (1) CohnReznick

breached its fiduciary duty by providing a Section 42(i)(7) Price calculation that "was inconsistent with federal tax law, [that] would imperil the Partnership's tax treatment, and [that] would prevent AMTAX from receiving all the tax benefits and other benefits it was promised and to which it is entitled" (Compl. ¶ 118); (2) CohnReznick committed professional negligence when it prepared a Section 42(i)(7) Price calculation excluding Exit Taxes, thereby threatening the tax benefits AMTAX received over the life of the Partnership (*Id.* ¶ 126); (3) AMTAX reasonably relied on CohnReznick's misrepresentation that "it would provide impartial and independent advice to protect AMTAX's tax status" (*Id.* ¶ 139); and (4) CohnReznick "jeopardized the tax attributes of the Partnership." (*Id.* ¶ 145.)  Engrained in each of these allegations is the issue of whether CohnReznick's tax advice and calculations were consistent with federal tax law, and that determination *requires* this Court to interpret the Code.

This situation parallels *Jacobson*, which involved a bank's alleged misrepresentations about the tax status of certain trusts.  As in that matter, AMTAX's claims largely "predicate[] liability" on CohnReznick's statements and omissions about the Partnership's tax status—i.e., the Minimum Gain and Section 42(i)(7) Price calculations it performed.  *Jacobson*, 824 F.3d at 317.  Thus, in order to find that CohnReznick engaged in certain alleged misconduct, AMTAX "must prove" the proper meaning of Section 42(i)(7).  *Id.*

CohnReznick, by contrast, addresses the "necessarily raised" factor by answering the wrong question.  CohnReznick insists that "the central issue in dispute is whether CR owed any duty to AMTAX." (Motion at 13.)  Setting aside whether CohnReznick is right about that—which AMTAX disputes—this claim is entirely irrelevant because the proper standard is not whether an issue is "central" (a term CohnReznick does not even attempt to define), but whether the issue is "necessarily raised."  Here, the meaning of Section 42(i)(7) *is* "necessarily raised" by AMTAX's

claims.  CohnReznick also ignores that a defense, such as its assertions regarding lack of a duty, have no bearing on subject matter jurisdiction.  *See Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) ("[T]he assertion of such a defense is relevant only to whether the plaintiff can make out a successful claim for relief, and not to whether the court has original jurisdiction over the claim itself.").

*Second*, CohnReznick does not—because it cannot—reasonably argue that the "actually disputed" factor is not met.  The federal issue is "actually disputed" here because AMTAX's theory of liability involves a construction of Section 42(i)(7) and an interpretation of the Code that CohnReznick disputes.  *See, e.g., Jacobson*, 824 F.3d at 317; *State ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, 592 F. Supp. 3d 183, 208 (S.D.N.Y. 2022) (finding a federal tax issue was "actually disputed" where plaintiff's claim rested on an in interpretation of federal law that "Defendants necessarily dispute").  In any event, CohnReznick declines to address the issue and therefore concedes it.  (Motion at 13.)

*Third*, the federal issue raised by AMTAX's claims is plainly substantial because it involves federal tax law.  "The Supreme Court and [the Second Circuit] have found a significant federal interest in the interpretation of a federal law, such as in disputes over the meaning of a federal tax law [and] the scope of an Internal Revenue Code regulation."  *Tantaros*, 12 F.4th at 145 (citing to *Grable* and *Jacobson*); *see also State ex rel. Am. Advisory Servs., LLC,* 592 F. Supp. 3d at 211 ("The exercise of federal jurisdiction to determine international tax issues under the [Code] embedded in a state tax claim appears to be consistent with congressional judgment.").  "In

fact, 28 U.S.C. § 1340 demonstrates that Congress intended disputes involving federal tax statutes to be heard in federal courts." *Riseboro*, 401 F. Supp. 3d at 375.[3]

The Eastern District of New York has already determined that "the correct construction of 26 U.S.C. § 42(i)(7) and how it differs from a common law ROFR is a purely legal question that is substantial and will be applicable to many other LIHTC agreements nationwide." *Riseboro*, 401 F.Supp.3d at 374 (collecting cases where the ROFR issue has arisen). This decision makes sense because the interpretation of Section 42(i)(7) implicates not only the collection of tax revenue by the Treasury, but also the proper functioning of a federal program that is based, in significant part, on tax incentives. CohnReznick has no response to this unambiguous statement of law from this Court's sister court despite acknowledging the case in its moving papers. (Motion at 12.)

*Fourth*, "federal jurisdiction over this case will not trigger a voluminous amount of cases or transform state court litigation of traditional breach of contract actions involving ROFR provisions into federal litigation because 'it is the rare such action that hinges on the proper interpretation' of an admittedly unique ROFR under federal tax law." *Riseboro*, 401 F. Supp. 3d at 376 (quoting *Jacobson*, 824 F.3d at 318). CohnReznick's arguments to the contrary are based on cases relating to alleged errors by individual tax accountants where, unlike here, the meaning of federal tax law was not in dispute. *See Dagostine v. Pendleton*, 2022 WL 16950281 (S.D. W.Va. Nov. 15, 2022) (relating to a married couple's breach of a taxpayer repayment agreement); *Sheridan v. New Vista, LLC*, 406 F.Supp.2d 789 (W.D. Mich. 2005) (relating to an accountant's

---

[3] Section 1340 provides federal district courts with original jurisdiction over "any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1340. The Eastern District of New York found, as should this Court, that 28 U.S.C. § 1340 codified Congress' intent to resolve disputes involving federal tax statutes in federal courts. *Riseboro*, 401 F. Supp. 3d at 375.

use of an unambiguously disallowed tax strategy); *Fischer v. Fischer*, 2021 WL 1720213 (N.D. Tex. Apr. 30, 2021) (relating to a divorce dispute that did not require interpretation of the tax code).   These authorities provide no support for CohnReznick's contention that this Court's decision on the important but limited issue of the proper construction and application of Section 42(i)(7) will result in a wave of federal litigation.

This Court accordingly has subject matter jurisdiction over AMTAX's claims.

## II.  The Court Should Deny The Motion To Dismiss For Failure to State a Claim.

### a.  Colorado Law Applies to AMTAX's Claims.

Curiously, CohnReznick applies New York law throughout its motion without conducting a choice of law analysis and despite AMTAX's connections to Colorado.  (*See* Compl. ¶ 11 (explaining that AMTAX "operates exclusively in Colorado and the harm to AMTAX alleged herein was thereby sustained in Colorado").)  That is a crucial oversight because of the substantive differences between Colorado and New York law.

Under applicable choice of law principles, "the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Tel. Network, Inc*., 683 F.3d 424, 433 (2d Cir. 2012).  Here, there are at least two conflicts.  First, New York and Colorado's accrual rules differ for professional malpractice*. Compare Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 7 (N.Y. 2007) (explaining that accrual occurs "when the malpractice is committed") *with Prospect Dev. Co., Inc. v. Holland & Knight, LLP*, 433 P.3d 146, 152 (Colo. Ct. App. 2018) (explaining that Colorado follows the "discovery" rule for accrual).  Second, New York and Colorado law differ as to when a professional owes a duty of care. *Compare Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 464 (1st Dep't 2000) (contending privity was

required under New York law) *with Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995) (explaining that privity is not necessary in Colorado).

Where, as here, an actual conflict exists, "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute*.*" *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (*citing Babcock v. Jackson*, 191 N.E.2d 279, 282 (N.Y. 1963)).  In New York, for injuries that are "purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999).  New York accordingly will apply the law of the state in which the plaintiff resides.  *See, e.g.*, *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 725 (S.D.N.Y. 2017) (Buchwald, J.) (applying New York law where injury was suffered in New York); *Norex Petroleum Ltd. v. Blavatnik*, 23 N.Y.3d 665, 671 (N.Y. 2014) (applying law of Alberta, Canada based on plaintiff's residence).  Because the injury here is purely economic and AMTAX is Colorado-based, Colorado law applies to AMTAX's claims.

### b. **AMTAX's Claims Are Not Time Barred.**

CohnReznick attempts the proverbial "gotcha" by arguing that AMTAX raised its claims three days too late.  (Motion to 16-17.)  Because Colorado law governs this dispute, however, its statute of limitations rules apply.  In Colorado, while claims for breach of fiduciary duty and fraud are subject to a three-year statute of limitations (C.R.S.A. § 13-80-101) and claims for professional negligence and unjust enrichment are subject to a two-year statute of limitations (C.R.S.A. § 13-80-102), "[t]o determine when a claim accrues, Colorado courts use the discovery rule." *Prospect Dev. Co., Inc.*, 433 P.3d at 152 (citing *Rantz v. Kaufman*, 109 P.3d 132, 136 (Colo. 2005).  Under this rule, professional negligence, breach of fiduciary duty, and unjust enrichment claims accrue

"'on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence.'"  *Prospect Dev. Co., Inc.*, 433 P.3d at 152 (citing C.R.S.A. § 13-80-108(1)); *see also In re Behrends*, 2017 WL 4513071, at *24 (D. Colo. April 10, 2017) (stating that unjust enrichment claim accrues "when a person discovers, or through the exercise of reasonable diligence should discover, that all elements of the claim are present").  "For such claims to accrue, the plaintiff must have knowledge of facts that would put a reasonable person on notice that the defendant engaged in wrongful conduct, and that wrongful conduct caused some damages." *Prospect Dev. Co., Inc.*, 433 P.3d at 152.

Here, AMTAX's claims did not accrue on February 7, 2020, as CohnReznick asserts.  Not only was AMTAX not provided with the calculation on February 7, 2020, but that document was prepared with no indicia of authorship (*see* Compl. ¶ 7), and it was not discovered by AMTAX until late 2022.  (*See id.* ¶ 77, 104.)  In short, AMTAX did not and could not discover its claims against CohnReznick until it discovered the secret engagement letter years after it was prepared.  Nor did AMTAX have any reason to suspect that CohnReznick would deliberately violate its longstanding relationship of trust and confidence with AMTAX, particularly in manner that contradicted the very calculations CohnReznick had prepared for AMTAX's benefit.  As such, AMTAX's claims did not accrue until late 2022, and the statute of limitations does not bar any of its claims.

Though New York law does not apply, AMTAX's claims are not barred under New York law either because, even accepting CohnReznick's accrual date, the Governor's COVID-19 executive orders tolled the statute of limitations for all claims by 228 days.  *See* New York Executive Order Nos. 202.8; 202.72; *see also Brash v. Richards*, 195 A.D.3d 582, 585 (2d Dep't 2021).  Further, the longstanding relationship between AMTAX and CohnReznick requires

application of the continuous representation doctrine, which tolls the statute of limitations through the end of the engagement. *See Lemle v. Regen, Benz & MacKenzie, C.P.A.'s, P.C.*, 165 A.D.3d 414 (1st Dep't 2018) (applying the doctrine to an accounting firm).[4]

### c. __The Complaint States a Claim for Fraud.__

CohnReznick defrauded AMTAX by misleading AMTAX for years into believing that CohnReznick would protect the tax benefits AMTAX was entitled to by virtue of its 99.99% ownership of the Partnership. This fraud took multiple forms. First, CohnReznick concealed and failed to disclose the fact that it had an allegiance to TDC that made CohnReznick incapable of rendering impartial and independent advice to AMTAX. CohnReznick perpetrated this deception to curry favor with TDC (and other developer general partners) while seeking to preserve its relationship with AMTAX. Second, CohnReznick provided partial and misleading disclosures to AMTAX in the form of Exit Tax Calculations and Minimum Gain calculations that reasonably led AMTAX to believe that its Exit Taxes would be included in the 42(i)(7) Price calculation. And third, CohnReznick failed to correct its prior Exit Tax Calculations and Minimum Gain calculations once it decided to adopt the interpretation of Section 42(i)(7) set forth in the Sham ROFR Calculation.

To adequately plead a fraudulent concealment claim, AMTAX "must demonstrate that: 1) the defendant failed to disclose a past or present fact that he or she had a duty to disclose; 2) with

---

[4] In any case, the statute of limitations should be equitably tolled due to CohnReznick's improper conduct (i.e., concealing its conflict of interest by removing indicia of authorship). *See Shell Western E&P, Inc. v. Dolores County Bd. Of Com'rs*, 948 P.2d 1002, 1009 (Colo. 1997) (En Banc) (applying the equitable tolling doctrine); *Doe v. United States*, 76 F.4th 64 (2d Cir. 2023) (same); *see also De Sole v. Knowedler Gallery, LLC*, 137 F.Supp.3d 387 (S.D.N.Y. 2015) (equitable tolling applies where plaintiff plausibly alleges "that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing") (citation omitted).

intent to induce the plaintiff to take a course of action he or she would not otherwise have taken; and 3) that plaintiff justifiably relied on the omission." *Beck v. Am. Honda Fin. Corp.*, 2020 WL 9424370, at *6 (D. Colo. Mar. 3, 2020) (citation omitted).  Each of AMTAX's fraud theories satisfies these elements.

>    i.   *CohnReznick Had a Duty to Disclose Material Information to AMTAX.*

By virtue of the longstanding relationship of trust between CohnReznick and AMTAX, CohnReznick had a duty to disclose to AMTAX that it was working against the latter's interests on behalf of TDC, and that it had adopted an interpretation of federal tax law that was inconsistent with the calculations it had performed for AMTAX's benefit.

Under Colorado law, a duty to disclose will arise where there exists "material facts that in equity or good conscience should be disclosed."  *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1163-64 (10th Cir. 2008) (quoting *Poly Trucking, Inc., v. Concentra Health Servs., Inc.*, 93 P.3d 561, 564 (Colo. Ct. App. 2004)).  This means that a duty to disclose will exist where there is a special relationship of trust between the parties, which can be—but is not required to be—a fiduciary relationship.  *See F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1081 (D. Colo. 1997) (explaining the types of relationship that support a duty to disclose).  Such a confidential relationship "may arise from a multitude of circumstances," including when one party has "superior position over another with the opportunity to use that superiority to his advantage over the other," or when "one party has taken steps to induce another to believe that it can safely rely on the first party's judgment or advice."  *First Nat. Bank of Meeker v. Theos*, 794 P.2d 1055, 1061 (Colo. App. 1990); *see also European Motorcars of Littleton, Inc. v. Mercedes–Benz USA, LLC*, 2017 WL 2629133, at *10 (D. Colo. June 19, 2017) (collecting Colorado cases finding a special relationship between parties that often work closely and rely on one another).

Here, the Complaint alleges facts showing a relationship of trust and confidence between CohnReznick and AMTAX, as the parties worked together for two decades and AMTAX relied on CohnReznick's advice and guidance. (*See, e.g.*, Compl. ¶¶ 1, 2, 43, 59, 65.) While AMTAX did not directly retain CohnReznick, it was the 99.99% owner of the Partnership that was CohnReznick's client, and consistent with industry customs, AMTAX relied upon CohnReznick's expertise in evaluating the complex issues that make an accountant's role critical for a LIHTC partnership. (*See, e.g.*, *id.* ¶¶ 30, 31, 58, 64, 68.) This "active involvement" with AMTAX created a duty to disclose irrespective of whether AMTAX was specifically named in the engagement letter. *Church Mut. Ins. Co. v. Coutu*, 2018 WL 1517022, at *3 (D. Colo. Mar. 28, 2018) (rejecting argument there was no duty for an appraiser to disclose a conflict of interest).

Although CohnReznick asserts that "the Complaint is devoid of any allegation that [CohnReznick] even communicated with AMTAX" (Motion at 23), that is also wrong. Rather, the Complaint alleges that "CohnReznick worked directly and in depth with AMTAX's representatives" in performing various analyses for AMTAX's benefit, including highly significant Minimum Gain calculations based on AMTAX's large negative capital account. (Compl. ¶ 116.) Given those prior calculations and the close relationship between CohnReznick and AMTAX, CohnReznick plainly had a duty to disclose to AMTAX the secret engagement letter with TDC and the resulting conflict of interest. *See, e.g.*, *Coutu*, 2018 WL 1517022, at *3. (finding a duty to disclose); *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1233 n.12 (10th Cir. 1996) ("[A]ccountants may have a special duty to disclose 'when they make affirmative statements on which they know the investors will rely.'"). At a minimum, CohnReznick's superior knowledge and expertise required it to disclose to AMTAX that it was performing calculations for TDC that contradicted the work it had done for AMTAX's benefit. *See, e.g., Airy v. Guy-Icon, Inc.*, 2020

17

WL 12948360, at *2 (Colo. Dist. Ct. Sep. 4, 2020) ("superior knowledge" created a duty to disclose).[5]

Further, CohnReznick knew when it performed the Sham ROFR Calculation that AMTAX reasonably believed—based on CohnReznick's representations and calculations—that Exit Taxes would be included in any Section 42(i)(7) Price. To the extent that CohnReznick's changed its view of the proper meaning of Section 42(i)(7), CohnReznick had a duty to correct the misinformation it had provided to AMTAX. Its willful failure to do so is a fraud. *See Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F.Supp.2d 1135, 1142 (D. Colo. 2008) (finding duty to disclose from partial statement that was substantively misleading); *In re Synergen, Inc. Sec. Litig.*, 863 F. Supp. 1409, 1418 (D. Colo. 1994) (finding a duty to disclose "to correct [defendants'] previous statements" due to changed data).

ii.   *CohnReznick Concealed Material Information with the Intent to Deceive AMTAX.*

In deciding the issue of intent, courts interpreting Colorado law look to the "totality of the circumstances." *In re Bloom*, 622 B.R. 366, 438 (Bankr. D. Colo. 2020) *aff'd*, 2022 WL 2679049 (10th Cir. July 12, 2022). As set forth in the Complaint, CohnReznick willfully concealed information from AMTAX regarding the exclusion of Exit Taxes from the Section 42(i)(7) Price calculation and its conflict of interest for financial reasons. This was part of CohnReznick's plan to cater to the more profitable repeat customer—TDC and developer general partners, in general—while, at the same time, attempting to avoid destroying its relationship with AMTAX. (*See* Compl. ¶¶ 82, 110, 140.) The Complaint thus sufficiently alleges CohnReznick's intent to deceive.

---

[5] Such a duty to disclose would also exist under New York law because a party with superior knowledge has an obligation to disclose material information. *See Koch v. Greenberg*, 14 F.Supp.3d 247, 258 (S.D.N.Y. 2014) (explaining that superior knowledge creates a duty to disclose under New York law).

### iii. *AMTAX Reasonably Relied on CohnReznick.*

CohnReznick seemingly concedes that AMTAX reasonably relied upon it because it fails to address the issue.  In any event, Colorado law provides that "[w]hen dealing with someone else, a person is justified in assuming that the other person will not intentionally fail to disclose a past or present material fact which the other person knows and has a duty to disclose." Colo. Jury Instr., Civil 4th 19:9 (2023).  AMTAX reasonably relied upon CohnReznick because it is a nationally recognized accounting firm with unique expertise in the complex and accountant-reliant LIHTC industry.  (*See* Compl. ¶¶ 12, 30, 31, 58, 62, 64, 68, 91.)

### d. **The Complaint States a Claim for Breach of Fiduciary Duty.**

Under Colorado law, a breach of fiduciary duty claim requires proof that: (1) the defendant was acting as a fiduciary of the plaintiff, (2) the defendant breached a fiduciary duty to the plaintiff, (3) the plaintiff suffered damages as a result of the breach, and (4) the defendant's breach of fiduciary duty caused the plaintiff's damages.  *See Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo. 1988); Colo. Jury Instr., Civil 4th 26:1 (2023).  Those elements are more than amply satisfied on the relevant facts.  CohnReznick breached its fiduciary duties to AMTAX by entering into a secret agreement to provide a Section 42(i)(7) Price calculation that was contrary to federal tax law and directly at odds with prior calculations provided to AMTAX.

### i. *CohnReznick Acted as a Fiduciary to AMTAX.*

CohnReznick owed AMTAX a fiduciary duty because of CohnReznick's superior and influential position vis-à-vis ATMAX and because of the close relationship of trust and confidence between the two.  "A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with the undertaking." *Destefano*, 763 P.2d at 284.  Colorado courts have found that "a variety of relationships can create a fiduciary relationship." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1162 (10th Cir.

19

2000) (collecting cases regarding the fiduciary relationship between stockbroker/customer, clergy/parishioner, and borrower/lender).  Such fiduciary duties "may extend beyond the confines of [] transactions."  *Murphy v. Schaible, Russo & Company, C.P.A.'s, LLP*, 2021 WL 3931223, at *11 (D. Colo. Sept. 2, 2021) ("A fiduciary duty may arise… when 'one of them is under a duty to act for or [] **give advice**'… [or] when one party occupies a **superior position** relative to another.") (emphasis added).  In any case, finding a fiduciary duty is a question of fact directed to the jury. *Id*. at *11.

AMTAX's reliance on CohnReznick arose from the latter's assurances regarding its expertise in LIHTC partnerships and the numerous calculations that it performed for AMTAX's benefit.  (*Id.* ¶¶ 62-63.)  CohnReznick's own assurances that it was "the nation's most experienced, well-versed and well-connected team in the nation" in the LIHTC space accurately depicts CohnReznick's superior position over AMTAX with respect to the tax implications of LIHTC-focused partnerships.  (*Id.* ¶ 31.)  As for the element of trust and confidence, that was built over decades by CohnReznick's own undertaking as the accountant and tax preparer for a partnership where AMTAX was the 99.99% owner.  (*Id.* ¶¶ 2, 49, 59, 65, 94, 119.)

AMTAX's reliance on CohnReznick, year after year, to give "honest, fair and transparent" representations as to AMTAX's tax status—and CohnReznick's willing assumption of that role—further establish the existence of a fiduciary relationship.  (*Id.* ¶ 59); *see also Moses v. Diocese of Colorado*, 863 P.2d 310, 321 (Colo. 1993) ("A fiduciary relation exists between two persons when one of them is under a duty to act for or give advice for the benefit of another…"); *Atl. Richfield Co.*, 226 F.3d at 1163 ("A fiduciary [is] a person having a duty, created by [their] undertaking, to act [] for the benefit of another."); *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 518 (Colo. 1986) ("Evidence that the customer placed trust and confidence [] will be indicative of

the existence of a fiduciary relationship…").  Thus, due to CohnReznick's superior role in advising on LIHTC tax issues and AMTAX's complete trust and reliance on CohnReznick, it owed AMTAX a fiduciary duty.

   *ii.* <u>*CohnReznick Breached its Fiduciary Duty to AMTAX.*</u>

  CohnReznick again appears to have conceded this point by failing to argue that it did not breach a fiduciary duty to AMTAX.  It did.  A fiduciary's obligations are: (1) a duty of loyalty; (2) a duty to exercise reasonable care and skill; and (3) a duty to deal impartially with beneficiaries. *See Mabry v. Tom Stanger & Co.*, 33 P.3d 1206, 1209 (Colo. App. 2001).

  CohnReznick violated its duty of loyalty by entering into a secret engagement that opposed Plaintiff's interests (Compl. ¶¶ 77-83, 118); espousing a calculation methodology that was at odds with Section 42(i)(7) and, thus, its obligation to exercise reasonable care and skill (*Id.* ¶¶ 85-93, 118); and failing to disclose its inability to deal impartially with AMTAX due to its apparent choice to favor LIHTC developer general partners (*Id.* ¶¶ 7, 61, 84, 110.)  Accordingly, AMTAX has sufficiently pleaded that CohnReznick breached its fiduciary duties.

   **e.** <u>**The Complaint States a Claim for Professional Negligence.**</u>

  CohnReznick breached its professional duty of care to AMTAX by failing to perform at the level of care required of a Certified Public Accountant.  Under Colorado law, a prima facie case of professional negligence requires proof of the elements of a negligence claim.  *See United Blood Services, a Div. of Blood Systems, Inc. v. Quintana*, 827 P.2d 509, 518 (Colo. 1992) (applying "ordinary principles of negligence" to professional negligence claim).  The elements for negligence are that: (1) the defendant owed a legal duty of care; 2) the defendant breached that duty; 3) the plaintiff was injured; and 4) the defendant's breach caused that injury.  *See Greenberg v. Perkins*, 845 P.2d 530, 533 (Colo. 1993) (applying standard in a professional malpractice case).

   *i.* <u>*CohnReznick Owed AMTAX a Duty of Care*</u>

CohnReznick owed AMTAX a duty a care both because it provided tax advice to AMTAX upon on which it knew AMTAX would rely, and because AMTAX was the 99.99% owner of CohnReznick's client—*i.e.*, the Partnership.

Professional rules governing accountants that the state of Colorado has incorporated impose a duty upon accountants where that accountant knows of another's reliance.  Colorado has integrated and codified the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct.  *See* State Board of Accountancy, Code of Colo. Regul. of the State Board of Acct., 3 CCR 705-1 (2023); *see also In re Enron Corp. Sec., Derivative & Erisa Litig*., 762 F. Supp. 2d 942 (S.D. Tex. 2010) (using AICPA standards in a negligence and professional malpractice case); *In re CITX Corp., Inc*., 2005 WL 1388963, at *1 (E.D. Pa. June 7, 2005) (using AICPA's Principles of Professional Conduct.); *S.E.C. v. Caserta*, 75 F. Supp. 2d 79 (E.D.N.Y. 1999) (referencing AICPA's accounting principles as norms and specific guidelines.)  AICPA, in turn, states that an accountant is a professional who has "a responsibility to the public," which includes "clients, credit grantors, governments, employers, investors, the business and financial community, and **others who rely on the objectivity and integrity of members** to maintain the orderly function of commerce." AICPA Code of Pro. Conduct, at 5 (2020) (emphasis added).  This idea is consistent with Colorado law finding that professionals may owe an independent duty of reasonable care by virtue of their profession.  *See In re Abound Solar Manufacturing, LLC*, 547 B.R. 611, 626 (D. Del. Bankr. 2016) (applying Colorado law to find that auctioneers had an independent duty of care stemming from their profession that was separate from their contractual obligations) (*citing Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 315-17 (Colo. 1980)).  Colorado thus looks to reliance and to the standards governing a profession when evaluating the contours of a duty of care.

Here, CohnReznick owed AMTAX a legal duty of care because it knew AMTAX would rely on its advice and calculations. (Compl. ¶¶ 1, 63, 115.)  As a matter of law, that creates a duty of care.  *See Central Bank Denver v. Mehaffy, Rider Windholz & Wilson*, 865 P.2d 862 (Colo. Ct. App. 1994) (overturning dismissal of an investor's claim for negligent misrepresentation against an attorney who misstated material facts in an opinion letter issued to potential investors knowing they would likely rely upon them); *see also Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver*, N.A., 892 P.2d 230, 236 (Colo. 1995) (En Banc) ("A theory of negligent misrepresentation is proper where a professional knows that its representation will be relied upon by a non-client for business purposes"); *Marquest Medical Products, Inc. v. Daniel, McKee & Co.*, 791 P.2d 14 (Colo. Ct. App. 1990) (implicitly recognizing liability of certified public accountants for negligent misrepresentation because accountants provided financial information about a client to a third person who relied on the representations).  This duty of care existed even if CohnReznick's work with AMTAX was outside the scope of its engagement letter with the Partnership because it undertook that additional work on its own accord.  *See Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 412 P.3d 751, 763 (Colo. Ct. App. 2015) (finding law firm had a duty of care even though advice provided was outside scope of engagement "because once Law Firm undertook the additional or revised engagement, it had a duty to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in completing it") (citation omitted).

In fact, undertaking duties outside the engagement letter with the Partnership would amount to a separate assumption of duties to provide accounting services directly to AMTAX such that CohnReznick owed a professional duty to AMTAX.  *See Jefferson County School Dist. R-1 v. Justus By and Through Justus*, 725 P.2d 767, 771 (Colo. 1986) (En Banc) (duty arises where the

"defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff"); *see also P.W. v. Children's Hospital Colorado*, 364 P.3d 891, 896 (Colo. 2016) ("In general, a party assumes another's duty of care and may be subject to liability for breaching that duty where the party voluntarily undertakes to render a service.").[6]

### ii.   *CohnReznick Breached Its Professional Duty of Care.*

CohnReznick's duty of care was a heightened one and it breached that duty by providing a Section 42(i)(7) Price calculation at odds with federal law and by failing to disclose a blatant conflict of interest. "For those practicing a profession involving specialized knowledge or skill, the applicable standard of care generally requires the actor to possess a standard minimum of special knowledge and ability and to exercise reasonable care in a manner consistent with members of the profession in good standing." *Command Commc'ns, Inc. v. Fritz Companies, Inc.*, 36 P.3d 182,189 (Colo. App. 2001); *see also Hice v. Lott*, 223 P.3d 139, 143 (Colo. App. 2009) ("When a claim of negligence is based on an allegation that a professional was negligent, the plaintiff must show that the professional's conduct fell below the standard of care associated with that profession."); *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo. 2001) ("When a claimant levels a negligence [] claim against a professional, that professional is judged according to the tenets of the field to which he or she belongs.").   For its part, AICPA requires that

---

[6] Even if CohnReznick's erroneous assumption that New York law applies here was accurate, it would still owe AMTAX a professional duty of care. *See Credit Alliance Corp. v. Arthur Anderson & Co.*, 493 N.Y.S.2d 435 (1985).  First, CohnReznick was aware that the Exit Tax Calculations and the Sham ROFR Calculation would be used in connection with protecting LIHTC-related tax benefits.  (Compl. at ¶¶ 4-6, 57-61, 86-90.)  Second, it knew AMTAX specifically would rely on those calculations.  (*Id.* at ¶¶ 1, 63, 119, 129.)  And third, CohnReznick was connected to AMTAX by virtue of its 99.99% ownership of the Partnership and the work that CohnReznick directly performed for AMTAX's benefit.  (*Id.* at ¶¶ 1, 6, 63.)

accountants act with objectivity and integrity, and that they disclose conflicts of interest.  (Compl. ¶¶ 62, 84.)

CohnReznick therefore breached its professional duty of care by engaging in a separate secret agreement with TDC to provide a Section 42(i)(7) Price calculation at odds with federal law and the prior Exit Tax Calculations and Minimum Gain calculations.  (*See id.* ¶¶ 40-42, 65-66, 77-78, 80-82.)

### iii.    *CohnReznick's Breach Caused AMTAX's Injuries.*

As to causation, the test used is the 'but for' test, which dictates that "but for the alleged negligence, the harm would not have occurred."  *N. Colo. Med. Ctr., Inc. v. Comm. On Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996).  Causation "is ordinarily a question for the jury."  *Burns v. Pohto*, 2016 WL 9735750, at *5 (D. Colo. June 28, 2016), *report and recommendation adopted*, 2016 WL 9735751 (D. Colo. Sept. 14, 2016).

Given CohnReznick and AMTAX's business relationship, AMTAX relied on the accuracy of CohnReznick's work and was unaware that CohnReznick had performed the Sham ROFR Calculation.  (*See, e.g.*, Compl. ¶¶ 1, 2, 43, 59, 65.)  Had CohnReznick refused to undertake the secret engagement to perform the Sham ROFR Calculation, AMTAX would not have had to litigate the MA Action because there would have been no dispute regarding the Section 42(i)(7) Price.  (*Id.* ¶¶ 120, 130.)  Thus, AMTAX has met its burden of pleading a claim for professional negligence.[7]

---

[7] The fiduciary duty and fraud claims are not duplicative of the professional negligence claim. Colorado courts have recognized that where there is a "fundamental difference" between claims those claims are not duplicative. *Brancato v. Panio*, 2013 WL 12324483, at *4 (D. Colo. Feb. 21, 2013) (collecting cases where a negligence claim and breach of fiduciary duty claim coexisted). Here, there are distinctions among the professional negligence claim, the fraud claim, and the fiduciary duty claim as to both the source and nature of the duty. AMTAX's negligence claim asserts that CohnReznick failed to exercise the reasonable care of a professional, citing specifically

**f.   The Complaint States a Claim for Unjust Enrichment.**

CohnReznick asserts that the existence of the secret engagement letter forecloses AMTAX's unjust enrichment claim, and it cites to inapplicable New York law for the proposition that this is so despite the fact that AMTAX is not a party to that engagement letter.  (Motion at 25-26.)  Contrary to CohnReznick's wishful thinking, the 2020 Engagement Letter does not foreclose AMTAX's unjust enrichment claim because AMTAX "is not a party to the applicable express contract."  *MidCities Metropolitan Dist. No. 1 v. U.S. Bank Nat. Ass'n*, 2013 WL 3200088, at * 8 (D. Colo. June 24, 2013) (maintaining an unjust enrichment claim despite the existence of an express contract because plaintiff was not a party to that agreement).  Further, Colorado recognizes two further exceptions to the general express contract rule: "The first exception . . . provides that a party can recover on a quasi-contract when it covers conduct outside the express contract or matters arising subsequent to the express contract. . . . Second, a party can recover on a quasi-contract when the party will have no right under an enforceable contract."  *Id.*  Both exceptions apply here because (1) the unjust enrichment claim relates not just to the Sham ROFR Calculation but also the Exit Tax Calculations and Minimum Gain calculations that are outside the scope of the secret engagement letter (*see* Compl. ¶ 145), and (2) AMTAX has no recourse under the secret engagement letter.

---

to the regulations provided by AICPA.  (Compl. ¶ 62.)  The breach of a fiduciary duty claim, on the other hand, references CohnReznick's self-interest and conflict of interest. (*Id.* ¶¶ 7, 61, 84, 110, 118); *see also Boyd v. Garvert*, 9 P.3d 1161, 1162 (Colo. Ct. App. 2000) (permitting both claims to proceed because the negligence claim analyzed whether an attorney's conduct comported with what a reasonable attorney would do and the fiduciary duty claim looked to the attorney's "self-interest" and "conflict of interest").  And the duty to disclose in the fraud claim arises from both the parties' relationship and partial disclosures made by CohnReznick.  Accordingly, the claims rely on separate sets of material facts.

Beyond that gating issue, AMTAX states a claim for unjust enrichment.  Unjust enrichment requires proof that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000).  CohnReznick contests only the first element by arguing that the claim fails because AMTAX did not pay CohnReznick's compensation.  This is an irrelevant point unsupported by case law.  At bottom, CohnReznick continued to extract fees from the Partnership in exchange for rendering services that would directly damage AMTAX by excluding its Exit Taxes from a ROFR calculation, threatening its associated tax benefits, and ultimately ensnarling AMTAX in litigation.  (*See* Compl. ¶¶ 144-45.)

### g.  AMTAX Alleges Cognizable Damages.

CohnReznick argues that AMTAX does not allege cognizable damages (Motion at 26) while, at the same time, conceding that that AMTAX has suffered damages, though supposedly limited in amount.  (Motion at 26, n. 14.)  In any case, AMTAX claims and is entitled to legal fees incurred in the MA Action because "Colorado—like many other states—has long-recognized that litigation expenses and attorneys' fees incurred by a party in one case may, in certain circumstances, be an appropriate measure of damages against a third party in a subsequent action." *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1071 (Colo. 2010).  Further, AMTAX seeks and is entitled to disgorgement of fees paid to CohnReznick in connection with the secret engagement letter and Sham ROFR Calculation.  *See Berger v. Dixon & Snow, P.C.,* 868 P.2d 1149, 1152 (Colo. App. 1993) ("The remedy of restitution is based on the general principle that one should not be permitted to keep that which 'in equity and good conscience' should be restored to another…").

### III. Collateral Estoppel Does Not Apply.

CohnReznick attempts to use a non-final state-court opinion in a case to which CohnReznick was not even a party to avoid accountability for its actions. But this case does not meet the elements of collateral estoppel, which are evaluated under the law of the state rendering the prior judgment. *See Braun v. City of New York*, 284 F. Supp. 3d 572, 576 (S.D.N.Y. 2018). Those requirements include:

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; [] (3) the issue in the prior adjudication was identical to the issue in the current adjudication [and] [4] the issue decided in the prior adjudication must have been essential to the earlier judgment.

*Tuper v. North Adams Ambulance Service, Inc.*, 428 Mass. 132, 134 (Mass. 1998).

CohnReznick contends that that Massachusetts state court decision dated June 30, 2023, (1) "bars" AMTAX's breach of fiduciary duty claim here; and (2) demonstrates that CohnReznick acted in good faith because its ROFR calculation was colorable. (Motion at 12 n.16.) As for the first issue, that contention makes no sense because CohnReznick's duties to AMTAX were neither raised nor litigated in the MA Action (where CohnReznick is not a party). Whether CohnReznick violated its legal duties to AMTAX will be decided for the first time in this action.

As to the second issue, CohnReznick cannot satisfy the third and fourth prongs of the collateral estoppel test. Because the MA Action involved contractual claims, the Massachusetts state court was not tasked with deciding whether CohnReznick's Sham ROFR Calculation was made in good faith even though it was (1) inconsistent with decades of consistent tax advice that CohnReznick provided to AMTAX, and which AMTAX, in turn, relied upon, (2) contradicted CohnReznick's public advice regarding the calculation of a Section 42(i)(7) Price, (3) transgressed accepted industry standards, and (4) was the product of a secret engagement that involved an undisclosed conflict of interest. The Massachusetts court merely found that *TDC's* interpretation

of Section 42(i)(7) was colorable because "[t]he parties have not pointed to any regulation IRS guidance, or case law providing direct support for their interpretation of [Section 42(i)(7)] and I have found none."  (Motion, at 8 (citing decision).)

Accordingly, the MA Action decision would, at best, preclude AMTAX from arguing that its interpretation of Section 42(i)(7) is supported by "regulation IRS guidance or case law". However, that issue has no bearing on AMTAX's claims against CohnReznick; the Complaint does not even allege there is any regulation IRS guidance or case law on the calculation of a Section 42(i)(7) Price.  Rather, the Complaint cites CohnReznick's advice to AMTAX and others, and voluminous, unequivocal industry guidance on the proper methodology for calculating a Section 42(i)(7) Price.

## **CONCLUSION**

For the reasons set forth above, Plaintiff submits that the Court should deny Defendant's Motion.

Dated: October 6, 2023
         New York, NY

**GLENN AGRE BERGMAN & FUENTES LLP**

  */s/ L. R. Skibell*

L. Reid Skibell, Esq.
  Rskibell@glennagre.com
Olga Lucia Fuentes Skinner, Esq.
  Ofuentes@glennagre.com
Avelino A. Garcia, Esq.
  Agarcia@glennagre.com
1185 Avenue of the Americas, 22nd Floor
New York, New York 10037
Tel: (212) 970-1600

*Attorneys for AMTAX Holdings 227, LLC*

29